HOLLIS R. BAILEY, trustee, vs. CAROLINE A. WOOD & another.

Suffolk.    December 7, 1908. — June 24, 1909.

Present : KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Insurance*, Life.  *Husband and Wife.  Bankruptcy.  Constitutional Law.  Limitations, Statute of.*

St. 1894, c. 522, § 73, re-enacted in substance in R. L. c. 118, § 73, contains the following provision : "Every policy of life insurance made payable to or for the benefit of a married woman, or after its issue assigned, transferred, or in any way made payable to a married woman, or to any person in trust for her or for her benefit, whether procured by herself, her husband or by any other person, and whether the assignment or transfer is made by her husband or by any other person, shall inure to her separate use and benefit, and to that of her children, subject to the provisions of this section relating to premiums paid in fraud of creditors."  *Held*, that this statute applies to and includes an assignment by a husband to his wife of a paid up endowment life insurance policy, and that such an assignment, made when the assignor is deeply insolvent and is known to be so both by himself and his wife and followed by the bankruptcy of the assignor, is good against the trustee in bankruptcy of his estate by virtue of the statute, although the facts may be such that except for the statute the assignment would be in fraud of his creditors.

The provision of St. 1894, c. 522, § 73, re-enacted in substance in R. L. c. 118, § 73, by which, as interpreted by this court, an assignment of a paid up endowment life insurance policy by a husband to his wife, made when the husband is deeply insolvent, and which except for the statute would have been in fraud of creditors, is good against the trustee in bankruptcy of the husband's estate, is not unconstitutional as creating an unreasonable exemption of property unlimited in amount.

The question, whether an allegation in a declaration that the defendant "concealed the cause of action" can be treated, on demurrer, as an allegation that the defendant fraudulently concealed the cause of action within the meaning of R. L. c. 202, § 11, so that the statute of limitations did not begin to run until the discovery of the cause of action, here was suggested but not considered.

MORTON, J.  This is a bill in equity by the trustee in bankruptcy of one James A. Wood to recover the proceeds of a paid up endowment life insurance policy on the life of Wood alleged to have been transferred by him in fraud of his creditors to his wife, the defendant Caroline A. Wood, in December, 1901. The policy matured, as alleged, in April, 1904, and upon maturity the insurance company paid over the amount due thereon, $20,000,

to the defendant Caroline A. Wood. The bill as originally drawn and filed was demurred to, and the demurrer was sustained. Thereupon the bill was amended, and was again demurred to. This demurrer was also sustained, and, the plaintiff apparently not desiring to amend further, a decree was entered dismissing the bill with costs.* The plaintiff appealed.

The sole question is whether a paid up endowment life insurance policy, taken out by the husband and transferred by him to his wife by a voluntary assignment, comes within the provisions of St. 1894, c. 522, § 73, now R. L. c. 118, § 73. The plaintiff contends in effect that the statute applies only to the ordinary case of a life insurance policy where the premium is to be paid from year to year, and does not apply to a case like that before us, or, if it does, that it is unconstitutional and void.

The statute provides that "every policy of life insurance made payable to or for the benefit of a married woman, or after its issue assigned, transferred, or in any way made payable to a married woman, or to any person in trust for her or for her benefit, whether procured by herself, her husband or by any other person, and whether the assignment or transfer is made by her husband or by any other person, shall inure to her separate use and benefit, and to that of her children, subject to the provisions of this section relating to premiums paid in fraud of creditors." St. 1894, c. 522, § 73. R. L. c. 118, § 73. The provisions "relating to premiums paid in fraud of creditors" follow a provision that, when a policy of insurance has been effected by a person on his own life or that of another in favor of some other person than himself having an insurable interest therein, the beneficiary shall be entitled to the proceeds as against creditors and representatives of the person affecting the same, and may maintain an action thereon in his own name, "Provided, [and these are the provisions referred to] that, subject to the statute of limitation, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy."

The statute, it will be observed, does not undertake to exempt from its operation paid up endowment policies, or to confine its

---

* This decree was made in the Superior Court by *Fox,* J.

application to the ordinary life insurance policy, and we see nothing either in the history of the legislation relating to the matter, or in the policy of the law to warrant such a construction.   The St. of 1894, c. 522, § 73, was a re-enactment without material changes of former statutes and was itself re-enacted in substance in R. L. c. 118, § 73; St. 1844, c. 82; St. 1854, c. 453, § 28; St. 1856, c. 252, § 42; Gen. Sts. c. 58, § 62; St. 1864, c. 197; Pub. Sts. c. 119, § 167; St. 1894, c. 120.   In the codification of the insurance laws in St. 1887, c. 214, the provisions which had previously existed in regard to married women were omitted, probably for the reason that they were deemed unnecessary.   They were, however, re-enacted in St. 1894, c. 120, and have been in force ever since.   Any argument, therefore, in regard to a change of legislative policy which might have been drawn from their omission from the statute of 1887, if the matter had stopped there, is more than met by their re-enactment in 1894 and subsequent retention upon the statute book.   Whether the statute as we construe it is a good statute or a bad statute in respect to the opportunities which, as the plaintiff contends, it offers for fraud is a matter for legislative consideration.   Since 1844, with the exception of the seven years from 1887 to 1894, if they can be called an exception, it has been the policy of the Commonwealth to enable the husband and father to provide by insurance on his life for his wife and children, subject only to have premiums paid in fraud of creditors within the statutory period of limitation inure to their benefit out of the proceeds of the insurance, and since 1894 the law has included assignments from the husband to the wife of policies issued to the husband.   This has been regarded as a wise and humane policy and the constitutionality of the legislation has never been questioned, and we do not see how it can be successfully.   " It proceeds," as has been said, " upon the theory that the interest of a man's wife and children in his life, and his duty to make reasonable provision for their support, are not wholly subordinate to the claims of his creditors ; and that he may make an irrevocable settlement of a policy of insurance on his life for the benefit of his family." *Gould* v. *Emerson,* 99 Mass. 154.   See also *Central Bank of Washington* v. *Hume,* 128 U. S. 195.   The interests of creditors are protected by the provision that subject to the statute of limi-

tations premiums paid in fraud of their rights shall inure to their benefit from the proceeds of the policy. They were similarly protected in the beginning. See St. 1844, c. 82. Strictly speaking, only to the extent to which funds have been withdrawn from his estate by the debtor for the payment of premiums, can it be said that the insurance on his life has operated to the prejudice of his creditors. His life constitutes no part of the assets of his estate and nothing therefore is taken from his creditors by an insurance upon it in favor of his wife or the assignment to her of a policy of insurance already issued, though it may be true, as contended by the plaintiff, that, except for the statutory exemption in her favor, the policy like any other contract entered into by him and inuring to his benefit would constitute or could be found to constitute a part of the assets of her husband's estate. We assume in favor of the plaintiff, without deciding, that in view of the alleged deeply insolvent condition of the bankrupt at the time of the assignment of the policy by him to his wife the transfer could be found to have been in fraud of his creditors and that she would be accountable for the proceeds except for the statute. But we think that the statute applies, and that she is not accountable for the proceeds of the policy except to an amount equal to such premiums, if any, as have been paid in fraud of creditors.

The plaintiff concedes that the question of the construction of the statute and the validity of the exemption is one of State and not of federal law, and that the bankruptcy act recognizes the exemptions established by the several States. *Holden* v. *Stratton,* 198 U. S. 202. But he contends that the exemption being unlimited in amount is unreasonable and that the statute is, therefore, unconstitutional. If a man's life were property which his creditors could seize, there might, perhaps, be something in the contention. But, as already observed, the statute provides, in effect, that so much of the insurance as consists of property of the debtor which he has put into it by way of premiums in fraud of his creditors shall inure to them. Subject to this there can be nothing unreasonable in providing that one may insure his life to any amount that he chooses for the benefit of his wife and children, or that he may assign to his wife policies already issued to him. Various statutes have been enacted in which

this principle has been carried further than the statute under consideration carries it. Thus, R. L. c. 125, §§ 17, 18, 19, provides that the employees of a railroad, street railway or steamboat corporation may form themselves into a corporation to receive, manage and apply property and funds for the benefit of members and their families, and that the same shall not be liable to attachment or to be taken on execution for the debts or liabilities of the members. The same provision is made in regard to assessment insurance so called (R. L. c. 120, § 18) and the money or other benefit to be paid to the certificate holder or beneficiary in the case of a fraternal beneficiary corporation. R. L. c. 119, § 17. In all these cases the exemption is absolute and unlimited, and it was held in *Geer* v. *Horton*, 159 Mass. 259, in regard to the statute last cited, that the exemption was constitutional. In *Holden* v. *Stratton*, 198 U. S. 202, it was held, so far as the Supreme Court of the United States could hold, that a law of Washington providing that "the proceeds or avails of all life insurance shall be exempt from all liability for any debt" was constitutional, on the ground, in effect, that it was within "the general power of the Legislature to determine the amount and character of property which should be exempt." Without undertaking to determine whether there are any limits to the exercise of this legislative power, and, if there are any, what they are, it is enough to say that, if there are any, it is plain, we think, that they have not been exceeded in the statute before us.

The conclusion to which we have come on the main question renders it unnecessary to consider whether upon the facts alleged in the amended bill the statute of limitations would operate as a bar, though it is to be observed that the bill nowhere alleges that the defendant Caroline A. Wood fraudulently concealed the cause of action, but only that she "concealed the cause of action." See *Leslie* v. *Jaquith*, 201 Mass. 242.

*Decree affirmed with costs of appeal.*

*A. Whiteside & A. L. Millan*, (*H. R. Bailey* with them,) for the plaintiff.

*G. W. Anderson*, for Caroline A. Wood.

*H. P. Tilden*, for the Puritan Trust Company, submitted a brief.