**In re WALSH.**
**No. 6876.**

District Court, D. Minnesota, Third Division.
June 16, 1937.

John H. Horeish, of St. Paul, Minn., for bankrupt.

Lewis E. Solomon, of St. Paul, Minn., for trustee.

Oscar Hallam, of St. Paul, Minn., for a creditor.

NORDBYE, District Judge.

This matter came before the court on two petitions for review of an order made by the referee in bankruptcy filed February 24, 1937. On March 5, 1937, a creditor filed with the referee his petition for review of said order, and on March 6, 1937, the bankrupt filed her petition for review thereof.

The bankrupt appeared by her attorney, Mr. John H. Horeish; the trustee appeared by his attorney, Mr. Lewis E. Solomon; and a creditor appeared by his attorney, Mr. Oscar Hallam.

The matter came before the referee upon the written stipulation of the bankrupt and the trustee by their respective attorneys for the determination of the bankrupt's claim of exemption with respect to certain so-called retirement annuity contracts and the claim of the trustee to the cash surrender value of such contracts, and for amendment of the schedules heretofore filed herein by the bankrupt to include such contracts as assets claimed exempt by the bankrupt. The referee made the following findings of fact and conclusions of law:

"1. That the said Josephine T. Walsh was adjudicated bankrupt herein on the 31st day of October, 1935.

"2. That at the time of the bankrupt's voluntary petition herein and on the said 31st day of October, 1935, the bankrupt was the owner of three annuity contracts issued to her by the Equitable Life Assurance Society of the United States under the dates and being numbered as follows: Number 4,172,926, dated September 28, 1926; Number NM 4,857,291, dated September 25, 1928; and Number 7,583,810, dated January 8, 1929; and that each of said contracts, in consideration of an annual premium to be paid by the said bankrupt, provides for a life annuity to be paid the bankrupt after she shall attain the age of sixty, and that if she shall die before that time a death benefit in accordance with a table in the contract shall be paid to Ellie Walsh, a sister of the bankrupt, with a right reserved to the bankrupt to change the beneficiary.

"3. That each of said contracts had on October 31, 1935, a cash surrender value, which value, less loans theretofore made by the bankrupt on the security of the contracts, has been stated by the said Equitable Life Assurance Society of the United States to the trustee to be as follows:

On Contract Number 4,172,926 $245.08

On Contract Number 4,857,291 $439.45

On Contract Number 7,583,810 $136.08

"As conclusions of law, the Referee finds that the provisions in said contracts providing death benefits in favor of said Ellie Walsh constitute insurance, and as such the proceeds of such death benefits are exempt under Minnesota law from the claims of creditors of the bankrupt; that the provisions of said contracts for the benefit of the said bankrupt are in the nature of an investment and are not insurance and are not exempt from the claims of creditors under Minnesota law; and that if the bankrupt shall exercise for her own advantage or for the advantage of her estate the right reserved in said contracts or either of them to change the beneficiary therein named, or shall elect to realize the cash value thereof, or if the bankrupt shall survive until she attains the age of sixty, the amount of the cash surrender value of each contract as of October 31, 1935, shall become and be unadministered assets of this bankruptcy estate; and it is so ordered.

"It is further ordered that possession of the contracts be given the bankrupt; and that the schedules of the bankrupt be and they are hereby amended to include such contracts as assets claimed exempt by the bankrupt."

These policies are designated as retirement annuities. The bankrupt is referred

to therein as the annuitant. In brief, they provide for a stipulated amount to be paid to the society from the date of the contract until the annuitant shall become sixty years of age. The society agrees to pay to the annuitant beginning at the age of sixty a life annuity in a stipulated monthly amount. If the annuitant should die before reaching the age of sixty, the society agrees to pay to the sister of the annuitant, or such other person as annuitant may designate, a specified sum in accordance with the schedules contained therein. The annuitant has the option, to be exercised before the annuity payments begin, of electing in lieu of the annuity payments to commence at the age of sixty (1) a life annuity beginning approximately ten years after the policy is issued, according to the schedule of payments attached to the contract, or (2) a refund annuity beginning at the same age. Under the refund annuity, if annuitant dies before she has received in annuity payments a stipulated sum, the annuity payments are to be continued to the named beneficiary until such stipulated sum is paid in full.

The schedule which sets forth the payments to the beneficiary in the event the annuitant dies before any annuity payments are due provides that where the annual premium payment is $100, the beneficiary would receive $91 in case of the annuitant's death during the contract's first year. At the tenth year, the payment is $1,062 to the beneficiary, the annuitant having paid in $1,000. The amount payable is increased each year, until the twentieth year when $2,000 would have been paid to the society, the death benefit is $2,561. This latter sum would represent the premiums paid by the annuitant plus something less than 3 per cent. interest per annum on the premiums paid from year to year to the society. There are options on surrender or lapse and provisions for participation in the distribution of the divisible surplus of the society. The cash surrender value of the three policies at the time of adjudication, less loans made to the annuitant, totals $820.61.

■ If the available proceeds of these contracts as of the date of adjudication are exempt under the Minnesota law, then it is clear that the cash surrender value did not become an asset of the bankrupt's estate. Holden v. Stratton, 198. U.S. 202, 25 S.Ct. 656, 49 L.Ed. 1018.

■ In order to determine whether or not the referee's disposition of the question is correct, resort must be had to the statutes of Minnesota and a construction of the annuity contracts in light thereof. The only pertinent statute in the state dealing with exemptions of insurance is section 3387 of Mason's Minnesota Statutes 1927, which is entitled, "Who Entitled to Proceeds of Life Policy." It provides: "Whenever any insurance is effected in favor of another, the beneficiary shall be entitled to its proceeds against the creditors and representatives of the person effecting the same. All premiums paid for insurance in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy, if the company be specifically notified thereof in writing before payment."

Section 3388 is entitled, "Exemption in Favor of Family—Change of Beneficiary." It reads: "Every policy made payable to, or for the benefit of, the wife of the insured, or after its issue assigned to or in trust for her, shall inure to her separate use and that of her children, subject to the provisions of § 3387. But the person applying for and procuring such policy may change the beneficiary or beneficiaries, if the consent of the beneficiary or beneficiaries named in the policy is obtained, or if a power so to do is reserved in the contract of insurance, or in case of the death or divorcement of a married woman named as beneficiary."

Section 3314 defines insurance as follows: "Insurance is any agreement whereby one party, for a consideration, undertakes to indemnify another to a specified amount against loss or damage from specified causes, or to do some act of value to the assured in case of such loss or damage. It shall be unlawful for any person, firm or corporation to solicit or make or aid in the soliciting or making of any contract of insurance not authorized by the laws of this state. All contracts of insurance on property, lives, or interests in this state, shall be deemed to be made in this state."

It is evident that the exemption contemplated by section 3387 refers to life insurance. This section was first enacted in 1895, being section 71 of chapter 175 of the Session Laws of that year which was entitled: "An act to revise and codify the insurance laws of the state." The pertinent portion of the original act reads as

follows: "Sec. 71. When a policy of insurance is effected by any person on his own life, or on another life in favor of some person other than himself having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds, against the creditors and representatives of the person effecting the same; and a person to whom a policy of life insurance, hereafter issued, is made payable may maintain an action thereon in his own name."

The statute in its present form first appeared in the Revised Laws of Minnesota of 1905 (section 1691). It was first construed in Murphy v. Casey, 150 Minn. 107, 184 N.W. 783. Plaintiff therein was a judgment creditor of the insured and sought to levy upon the insured's alleged interest in three twenty-year payment plan life insurance policies with cash surrender options. The policies were payable to insured's mother with the right of the insured, however, to change the beneficiary at any time. All of the policies provided that, in the event the designated beneficiary should not be living at the death of the insured, the amounts due at his death should become payable to his heirs, executors, administrators, and assigns in the event no other beneficiary had been designated prior to insured's death. In determining the right of the judgment creditor to subject the insured's interest in the policies to the payment of the judgment, the court stated (150 Minn. 107, at page 108, 184 N.W. 783):

"It is contended by plaintiff that the cash surrender option given by the policies to defendant, in the exercise of which the named beneficiary has no voice, and also the contingent interest in and to the amounts payable in the event the beneficiary dies before the insured, are property rights in defendant which are available to creditors, and that the trial court erred in not so holding.

"Both these contentions are answered adversely to plaintiff by section 3465, G.S. 1913, by which insurance policies of this character, having a designated beneficiary, are exempt from the claims of creditors of the insured. The statute provides that— 'Whenever any insurance is effected in favor of another, the beneficiary shall be entitled to its proceeds against the creditors and representatives of the person effecting the same. All premiums paid for

insurance in fraud of creditors shall inure to their benefit from the proceeds of the policy, if the insurance company is specifically notified of the claim before payment.'

"No claim is here made on the theory that the premiums paid on these policies were in fraud of creditors, and rights arising under the latter clause of the statute are not involved; the sole claim presented being the asserted right to resort to the interests of the insured in the cash surrender option and his alleged contingent right in the event he shall survive the beneficiary.

"Our conclusion, after full consideration of the questions involved, is that the statute is one of exemption, and that the policies in question, so long as they remain without change of beneficiary by death or otherwise, are exempt from the claims of creditors, and the interests of the insured here sought to be reached are not available to them. To grant the relief on either ground asserted by plaintiff would in our view of the matter wholly destroy the intent of the statute and deprive beneficiaries in such cases of the protection the Legislature intended to secure to them.

"While it is true that the insured may cash in his policy without regard to the wishes of the beneficiary, that reserved right, since the insurance was effected and taken out for the benefit of the latter, to give force and effect to the statute, must, as to creditors seeking to exercise it in the place and stead of the insured, be deemed and held subordinate to the rights of the beneficiary. There are no sound reasons, either in morals or in equity and good conscience, why the creditor, to the detriment of the beneficiary, should be given the right and privilege of the insured in such cases. No credit is extended to the insured on the faith of the insurance, for all persons dealing with him are bound to know the law, and that money to become due thereon, when payable to a third person, is exempt from their claims. The statute is wise in its purpose, securing as it does after the death of the insured pecuniary aid and assistance to the beneficiary, usually some one who is dependent upon the insured for support, and should not be frustrated or impaired by opening the door to those who have no just or equitable claim to the money."

The Circuit Court of Appeals in Ralph v. Cox (C.C.A.8) 1 F.(2d) 435, adopted the construction of the statute as announced in Murphy v. Casey, supra. It is

clear, therefore, that if the Minnesota statute in question exempts in whole or in part, the avails of the annuity policies herein, this court is required to give the bankrupt the benefit of the statutory exemption, notwithstanding section 70a of the Bankruptcy Act (as amended, 11 U.S.C.A. § 110(a).

The referee concluded that the provision of the contracts providing for the payment of the so-called death benefits constituted insurance and, as such, the proceeds were exempt under the Minnesota statute, but in his order provided that the benefits that might inure to the bankrupt should become, upon the happening of that contingency, unadministered assets of the estate. He concluded that the investment feature, if and when it came into being, should be reserved for the creditors and that when the so-called insurance feature was eliminated by the act of the bankrupt, or by lapse of time, the cash value of the policies as of the date of adjudication should be made available to the creditors. If the annuitant lives until she is sixty— she is about fifty years now—and continues with her payments on the contracts and makes no election until she is sixty years of age, then, in accordance with the referee's order, the rights of the creditors would ripen and the cash value as of the date of the adjudication would pass to the trustee. Obviously, such order might delay the closing of the estate until the ten-year period had elapsed, or the estate would have to be reopened if and when the asset came into being by the survival of the annuitant. The referee cites, in support of this determination, In re Messinger (C.C.A.2) 29 F.(2d) 158, 68 A.L.R. 1205, and In re Horwitz (D.C.) 3 F.Supp. 16. The former involved an ordinary life insurance policy with the right of the insured to change his beneficiary; the latter a life insurance retirement contract. The referee quotes the following from the Horwitz Case (page 18):

"In re Messinger (C.C.A.) 29 F.(2d) 158, 160, 68 A.L.R. 1205, is decisive of the question here. * * * The court points out that 'the statute does not exempt the bankrupt if he exercises his reserved power to change the beneficiary for his personal advantage.' It points attention to the language of the section which provides that the lawful beneficiary ' "other than the insured" shall be entitled to the proceeds and avails' against the creditors and representatives of the insured. It is further said that the policy coming under section 55-a [the exemption statute] does not protect the insured against his creditors. Presumably an 'old line life insurance policy' was involved. If such is the law in relation to the ordinary life insurance policy, it assuredly must be the law where the beneficiary, as here, has an interest dependent upon two contingencies rather than one, and where the insured reserves to himself the endowment in case he survives a fixed period. * * *

"Following the law as laid down in the Messinger Case, the report of the referee is modified to the extent that, upon change of beneficiary for the personal advantage of the insured or at the expiration of the maturity term of the policies during the lifetime of the insured, the amount of the cash surrender value of each policy as of the date of the adjudication herein shall be and become unadministered assets of the bankrupt's estate. Possession of policies is given bankrupt."

It may be questioned that these New York cases really carry out the intention of the exemption statute by permitting the trustee to obtain the cash value of the policy at the date of adjudication upon certain rights and benefits vesting in the insured. If an endowment policy is deemed to be an insurance policy exempt under the statute, so as to afford the beneficiary the proceeds of the death benefit, a decree that the maturity of such policy shall permit the creditors to attach, may destroy that which the statute, as construed in Murphy v. Casey, supra, intended to protect. Life insurance, nevertheless, is the essential characteristic of such contract. The savings feature is incidental to the protection provided for one's dependents. This protection should not necessarily terminate when the policy matures. What incentive would there be to the insured to continue with the payment of his premiums and keep up his insurance if he is forewarned that, upon the maturity thereof, a substantial sum therefrom will be paid to his creditors? True, his loss would be just as great if he lapses his policy when he is adjudicated a bankrupt, but there is always the probability that, under these circumstances, a bankrupt would lose all interest in keeping his policy in force, and while the creditors would not suffer thereby, the insurance protection for the dependents will have ended. It is doubtful that the contingent maturity of such a policy should remain as a threat

and prejudice the continuation of the policy by the insured. Much confusion may result and the very purpose of the exemption statute be frustrated if the New York cases are followed. Nor is it clear that the Minnesota Supreme Court, in the construction of the exemption statute in question, would follow the decisions upon which the referee bases his determination of this case. It may be noted that the court in Murphy v. Casey, supra, considered the contention of a creditor's right to reach the contingent interest in and to the amounts payable in the event the beneficiary dies before the insured, and regarding the creditor's claim, though it was concededly more drastic than the doctrine of the New York cases, it is significant that the court stated (page 110 of 150 Minn., page 784 of 184 N. W.) : "What has been said and the conclusion reached applies equally to both of plaintiff's contentions. To hold with plaintiff on either point would result in the destruction of rights the Legislature intended to secure to the beneficiaries in such insurance contracts. To extend to the creditor the option to surrender the policy for the cash value would wipe out the rights of the beneficiary altogether. And to award to the creditor the insured's contingent interest, to come into life only in the event he outlived the beneficiary, would throw the whole contract relations of the parties into confusion, and prejudice and finally in all probability wholly destroy the benefit intended by the law to protect in the beneficiary. With the insured's rights turned over to the creditor he naturally would have no further interest in keeping the policy alive by the payment of premiums; while the creditor would willingly let the policy lapse for nonpayment, accepting the lapsed value in discharge of his claim. It is not likely that any creditor, in a case where the policy has 10 or 15 years to run, would consent to pay the maturing premiums, thus to keep the contract in force, in the hopes that the contingent interest of the insured would some time ripen by the death of the beneficiary, only to be confronted later on with the prior death of the insured, and the unquestionable right of the beneficiary to the insurance and the whole thereof. A situation of that kind is not at all improbable. Other uncertainties and confusion readily are suggested, all to the detriment of the beneficiary, and all impairing the rights intended to be secured by the statute. The court should not create a situation which will bring about results of the kind. It will be time enough for the creditor to reach out for the contingent interest of the insured after the rights of the beneficiary have been terminated by death or other lawful way."

But without determining the legality of the referee's theory under other circumstances, it would seem that either these annuity contracts should be considered as exempt as insurance policies within the meaning of the statute as construed in Murphy v. Casey, supra, or they should be considered as contracts which are primarily annuity investment contracts, entered into for the purpose of creating an estate for the annuitant, and as such do not come within the protection of the statute.

It is entirely likely that when the Legislature passed the insurance exemption statute, the primary purpose was to insure to the beneficiary of a life insurance policy the proceeds thereof upon the death of the insured, as against the creditors and representatives of the person effecting the insurance. This statute strictly construed would justify the view that any property rights inuring to the insured should be made available to his creditors. However, considering the protection that a life insurance beneficiary should have, and realizing that to permit the creditor to attach the cash value which inures to the insured would probably result in the insured lapsing his policy and the protection intended for the beneficiary would thereby be lost, a broad, liberal, and salutary construction of the statute was announced. In Murphy v. Casey, supra, it was recognized that the beneficiary is usually a dependent, and if such dependent is to enjoy the avails of the policy after the death of the insured, it is essential that neither the cash surrender value nor the insured's contingent interest be made subject to the lien of the insured's creditors. But there are no sound reasons why the exemption statute should be extended in its scope to include retirement annuity contracts which are primarily purchased and maintained in order to provide benefits for the insured and not to provide protection for one's dependents. A mere reading of the contracts in question impels one to the view that the policies are not life insurance contracts. The very essence and requirements of a life insurance contract do not exist. The so-

ciety did not write any insurance on the life of the insured, nor did the bankrupt effect any insurance on her life in favor of another. The sums to be paid to the beneficiary in the event of the death of the insured simply constitute the return of a part or all of the installment payments on the annuity premium, depending upon the time of death, together with approximately 3 per cent. interest. There is no principal sum that the beneficiary receives. Whatever payment is made to the beneficiary is entirely dependent upon the sums paid from time to time on the annuity contract. It is significant to note that, if the annuitant dies during the first year, only $91 is returned to the designated beneficiary, notwithstanding that $100 has been paid by the annuitant on her contract. It must be evident, therefore, that the society assumes no risk whatsoever. It incurs no loss upon the death of the annuitant; in fact, its interest is that the annuitant's life be of short duration, particularly after the annuity payments are commenced—exactly opposite to that of a life insurance contract. The annuitant's interest is that she shall have long life so as to enjoy the proceeds of an annuity built up on this savings plan. The contract is based upon a savings plan so as to obtain enough credit with the society at the age of sixty, or before if the annuitant elects, that the society will issue a supplemental certificate providing for the payment of the stipulated annuity. The so-called insurance feature is not only contingently so, but is clearly incidental to the primary purpose of the contract. A purchase of an annuity from some one other than an insurance company on the installment plan, with the provision that the installments should be returned to a designated assignee if the annuitant did not live until the age when the annuity should begin, would scarcely be considered life insurance. Certainly, the mere fact that an insurance society, licensed to write various types of contracts, issued the annuity contracts herein, does not stamp the policies as life insurance, nor does the fact that the annuitant pays the fund necessary for an annuity in installments rather than in one payment render the contract anything but an annuity. In fact, the single premium generally associated with pure annuities is carried out herein because the contract provides, as before mentioned, that when the annuitant attains the designated age, or has

elected that the annuity commence, the contract herein must then be surrendered and a supplemental certificate issued by the society.

In Carroll v. Equitable Life Assurance Society of United States (D.C.Mo.) 9 F. Supp. 223, Judge Reeves was considering the question whether a mutual insurance company could grant annuity contracts. The following sets forth his views as to the difference between annuity contracts and insurance contracts (page 224):

"3. An examination of the authorities does not warrant the conclusion that an annuity contract is an insurance contract. It may be defined as 'a yearly payment of a certain sum of money granted to another in fee for life or for years, and charging the person of the grantor only.' 2 R.C.L., § 1, p. 2. The granting of such contracts is not limited to insurance companies.

"The granting of annuity contracts is in the nature of an investment and has very little to do with mortality tables. The only case where a mortality table would be involved is where the annuity is granted for the life of an individual. In such case, the grantor would, of course, take into consideration the 'expectancy' of such person under accepted mortality tables.

"An annuity comprehends few of the elements of an insurance contract. Life insurance is defined as 'a mutual agreement by which one party agrees to pay a given sum upon the happening of a particular event contingent upon the duration of human life, in consideration of the payment of a smaller sum immediately, or in periodical payments by the other party.'

"It is also defined as 'a contract by which insurer for a certain sum of money or premium proportioned to the age, health, and other circumstances of the person, whose life is insured, engages that, upon the death of such person, within the period limited in the policy, insurer shall pay the sum specified in the policy according to the terms thereof.' 37 C.J., p. 359, § 1.

"Moreover, the elements and requisites of an insurance policy are, among others, 'a risk or contingency insured against and the duration thereof.' 'A promise to pay or indemnify in a fixed or ascertainable amount.'

"The above elements are not present in an annuity contract.

"4. An annuity contract might be granted by an insurance company or any

other corporation or individual for a certain period.

"In such case, the death of the annuitant would in no way become involved. Even a ·mortality table would not be consulted. The annuity contract is almost the reverse of an insurance policy. In the insurance contract, the assured pays the premium, in consideration whereof the company agrees to pay a stipulated sum upon his death. In an annuity, the annuitant pays a stipulated sum, and thereafter annual payments are made to the annuitant."

A further discussion of the characteristics of an annuity contract, as distinguished from an insurance contract, will be found in State ex rel. Thornton v. Probate Court, 186 Minn. 351, 243 N.W. 389. The question for determination therein was the amount of a succession tax arising out of certain contracts issued to the decedent in three so-called insurance policies. It was assumed that if-the contracts were life insurance, the insurance payable was not subject to tax. The so-called contracts ·issued to the decedent were executed upon the payment of a single premium in 1931. No future premiums or payments were required. The company agreed to pay to Thornton annually a specified sum beginning with the year 1932. Thornton died shortly after the policies were issued. Besides the annuities, the company agreed that during Thornton's lifetime there would be guaranteed earnings on the sum paid of $3\frac{1}{2}$ per cent. per annum, and such additional sum as might be determined out of the interest savings in excess of $3\frac{1}{2}$ per cent. There were no annuity payments made to Thornton during his lifetime, and in accordance with the ·provisions of the policy, upon Thornton's death, the beneficiaries were entitled to receive, and did receive, the amount paid by the insured to each company as single premiums on the policies, plus interest. In determining the nature of these policies, the court stated (186 Minn. 351, at page 355, 243 N.W. 389, 391):

"Although the contracts here in question have features in common with ordinary life insurance policies, their true effect and scope are vastly different. It cannot well be denied that the $90,000 Thornton paid to these companies remained virtually at his disposal, use, and control as long as he lived and passed at his death to the beneficiaries he named. True, the money he paid became the property of the companies, but they guaranteed to him a certain percentage of earnings thereon each year, and agreed to pay him specified annuities each year together with such dividends as might be earned and allocated to the fund his $90,000 helped to create. As long as he lived he had the right upon notice to have $90,000 returned. It seems to us this·$90,000, under these contracts, stands precisely in the same relation to him as· if he had deposited that amount in a bank under a contract similar to one of these. There would· be an obligation to pay ·the whole sum paid or deposited to him, if demanded in his lifetime, and to appointed beneficiaries upon his death. This obligation was an estate or property right of his to which the beneficiaries named succeeded at his death, and is subject to the tax. * * *

"But technically these contracts are not insurance policies, and cannot escape the tax as such. They are, to say the least, annuity contracts."

The Circuit Court of Appeals in Re Weick (C.C.A.6) 2 F.(2d) 647, considered the Ohio exemption statute which in its terms is more comprehensive than our own (section 9394, General Code of Ohio 1930):
"All policies of life insurance upon the life of any person, which may hereafter mature, and which have been or shall be taken out for the benefit of, or bona fide assigned to the wife or children, or any relative dependent upon such person, or any creditor, shall be held subject to a change of beneficiary if desired, for the benefit of such wife or children, or other relative or creditor, free and clear from all· claims of the creditors of such insured person; and the proceeds or avails of all such life insurance shall be exempt from all liabilities from any debt, or debts of such insured person."

The court held that the cash surrender values of endowment policies under the Ohio exemption statute did not pass to the trustee. It· is significant to note that the court concluded that it would seem that "the endowment feature is merely incident to the life insurance and not that the life insurance is incident to the endowment."

In a later ·case, the same court in Moskowitz v. Davis (C.C.A.6) 68 F.(2d) 818, considered the same statute when the trustee claimed three policies described as insurance policies, but which the court found to be an investment or pure endowment with provision for return of premiums. The ·facts may be obtained from the sylla-

bus: "Insurance contract required insurer to pay to the insured a stipulated sum of money on a designated date in the future, if the insured was then living. The policy further provided that, if the insured died before designated date, the policy, if in force, should become void, and in lieu thereof the insurer would pay to named persons or their executors, administrators, or assigns, the total premiums paid on the policy taken at the tabular annual rate, but without interest, such sum being increased by any existing bonus additions and any accumulated dividends held to the credit of the policy."

In discussing the claim of exemption, the court stated (page 819):

"Section 9394 does not deal with life insurance policies generally, but is limited to life insurance policies upon the life of any person which have been or shall be taken out for the benefit of his wife, children, dependent relative, or creditors, and we do not think that the contract in question falls within its terms. The contract does not purport to insure the life of Moskowitz. Upon its face it becomes void if he should die before its maturity. Its primary obligation is to pay him $1,200 if he should live beyond the maturity date. In the event he should not, there is no undertaking to compensate the son Frank for the loss of his father. In such case the obligation of the contract may be discharged by the return of the premiums to the son with certain small additions and dividends. Moskowitz's obvious purpose was to invest his money. If he should live, he had a profit. If, by reason of death before the maturity of the agreement the investment failed, his personal estate was protected to the extent of the premiums paid, and their sum was to be repaid to his son as a distributee of his personal estate. * * *

"We do not find in Re Weick (C.C.A.6) 2 F.(2d) 647, anything contrary to our conclusion. The Weick Case dealt with two life insurance policies with incidental endowment features rather than with a simple investment or pure endowment contract."

Similarly, there is no undertaking in the policies at bar to compensate the sister for the loss of the annuitant. The death benefit provision is nothing more than a recognition that the contemplated annuity payments on the annuity premium necessary to carry the annuity after the age of sixty did not materialize by reason of the death of the annuitant, and that the installments paid are to be returned to the person designated. Such a return is not insurance as that term is usually understood or accepted, nor are the usual characteristics of life insurance present which protect the loss which will be sustained by the death of the annuitant. The protection contemplated thereunder cannot be considered insurance. No agreement is made by this society to "indemnify another to a specified amount against loss or damage from specified causes." Section 3314, Mason's Minnesota Statutes 1927. The company did not even require a medical examination before issuing such a policy. The effect, scope, and purpose of the contract is markedly different from the insurance contract contemplated by the Minnesota exemption statute. Moreover, a savings plan annuity contract, in which the insurance feature is nothing more than the return of the cash surrender value, does not come within the purview of the statute in question. The referee's order, therefore, must be reversed, and

It is ordered that the cash value of the retirement annuities as of the date of adjudication vested in the trustee in bankruptcy, subject to the provisions of section 70a of the Bankruptcy Act (as amended, 11 U. S.C.A. § 110(a)).