ELMER P. FOX v. FREDA SWARTZ AND ANOTHER, *d. b. a.* THE FLAME CAFE. GEORGE C. STETSON, APPELLANT.[1]

January 4, 1952.

No. 35,497.

---

[1]Reported in 51 N. W. (2d) 80.

338

*Ralph L. Berman* and *Stetson & Jacobson,* for appellant.

*Henry H. Bank,* for Freda and Joseph Swartz, *d. b. a.* The Flame Cafe, respondents.

*Harold M. Fredrikson* filed a brief as *amicus curiae* on behalf of Northwestern National Life Insurance Company of Minneapolis, Minnesota.

*Walter J. Wheeler* filed a brief as *amici curiae* on behalf of Minnesota State Association of Life Underwriters, Inc., Minneapolis Association of Life Underwriters, St. Paul Association of Life Underwriters, Central Minnesota Life Underwriters' Association, Duluth Life Underwriters' Association, Minnesota Valley Life Underwriters' Association, Southeastern Minnesota Life Underwriters' Association, Southern Minnesota Life Underwriters' Association, Tri-County Life Underwriters' Association, and West Central Minnesota Life Underwriters' Association.

MATSON, JUSTICE.

George C. Stetson as assignee of plaintiff's judgment appeals from an order granting defendant Swartz's motion to vacate a levy of execution and denying the assignee's motion for an order directing the sheriff to sell said defendant's interest in and to a 15-year insurance endowment policy.[2]

In this appeal we are concerned with the following issues:

(1) Is a 15-year endowment policy, prior to its maturity, exempt from the claims of creditors pursuant to M. S. A. 61.14 and 61.15 when such policy by its terms is payable at maturity to the insured but, if he dies prior to its maturity, is payable to his wife if she survives, otherwise to his son, which policy reserves to the insured

[2]As *amici curiae*, two briefs were filed herein, one by Northwestern National Life Insurance Company and the other by Minnesota State Association of Life Underwriters, Inc., The Minneapolis Association of Life Underwriters, The St. Paul Association of Life Underwriters, Central Minnesota Life Underwriters' Association, Duluth Life Underwriters' Association, Minnesota Valley Life Underwriters' Association, Southeastern Minnesota Life Underwriters' Association, Southern Minnesota Life Underwriters' Association, Tri-County Life Underwriters' Association, and West Central Minnesota Life Underwriters' Association.

the right to change beneficiaries and the further right to have the dividends (a) paid in cash, (b) applied on the payment of any premium, (c) applied to the purchase of paid-up additional insurance payable upon death or maturity, or (d) left with the insurance company to accumulate as an interest-bearing savings fund, subject to cash withdrawal at any time, but if not withdrawn to be added to the policy proceeds payable upon death or maturity?

(2) Do the dividends and any accumulated interest thereon, as separated and distinguished from the cash-surrender value of the policy, constitute *proceeds* of the policy within the meaning of § 61.14?

(3) Are §§ 61.14 and 61.15 unconstitutional as creating an unreasonable exemption as to amount in contravention of Minn. Const. art. 1, § 12?

(4) Does the exemption created by §§ 61.14 and 61.15, as applied to the cash-surrender value and as to accrued dividends left to accumulate at interest under an endowment insurance policy, create and constitute a discriminatory classification as to savings and investments in contravention of Minn. Const. art. 1, § 12, so as to render said statutory sections unconstitutional?

The issues arise out of the following facts:

Plaintiff is the owner by assignment of a judgment against defendant. About six weeks after the entry of his judgment in 1946, defendant purchased from the Northwestern National Life Insurance Company a $10,000 endowment savings policy embodying the terms set forth in the issue first above stated. On May 1, 1950, pursuant to the above judgment, the sheriff of Hennepin county levied execution upon said endowment policy with respect to the cash-surrender value thereof and any and all accumulated or unpaid dividends. At the time of the levy, the policy had a cash-surrender value of $1,837.67 and accrued dividends, with accumulated interest of $128.11.

Defendant moved the court for an order directing the sheriff to vacate the levy of execution on the ground that said endowment policy was exempt pursuant to § 61.14. Plaintiff made a counter-

motion for an order requiring the sheriff to sell defendant's interest in the policy. On the ground that the endowment policy is exempt under §§ 61.14 and 61.15, the trial court denied plaintiff's counter-motion but granted defendant's motion by setting aside the levy on the policy and by enjoining the sheriff from proceeding further with the writ of execution. Plaintiff's appeal is taken from this order.

Sections 61.14 and 61.15 read as follows:

"**61.14 Proceeds of Life Policy, Who Entitled To.** When any insurance is effected in favor of another, the beneficiary shall be entitled to its *proceeds* against the creditors and representatives of the person effecting the same. *All premiums* paid for insurance in fraud of creditors, *with interest thereon,* shall inure to their benefit *from the proceeds* of the policy, if the company be specifically notified thereof, in writing, before payment." (Italics supplied.)

"**61.15 Exemption in Favor of Family; Change of Beneficiary.** Every policy made *payable to, or for the benefit of,* the wife of the insured, or after its issue assigned to or in trust for her, shall inure to her separate use and that of her children, subject to the provisions of section 61.14. The person applying for and procuring the policy may change the beneficiary or beneficiaries, if the consent of the beneficiary or beneficiaries named in the policy is obtained, or if a power so to do is reserved in the contract of insurance, or in case of the death or divorcement of a married woman named as beneficiary." (Italics supplied.)

Does the endowment policy fall within the exemption classification created by §§ 61.14 and 61.15? These two sections were simultaneously and originally enacted as a single section (L. 1895, c. 175, § 71) and by their original wording expressly dealt with life insurance. In their present form (which first appeared in R. L. 1905, §§ 1691, 1692), it is clear by context, chapter, and title that they still pertain to life insurance.[3] We are con-

---

[3]See, In re Walsh (D. C.) 19 F. Supp. 567; In re Horwitz (D. C.) 3 F. Supp. 16.

cerned, therefore, with the question whether the endowment policy herein is life insurance. The problem can best be approached by first determining the distinguishing characteristics of life insurance. A life insurance policy may be defined as a mutual contract whereby the insurer in consideration of the payment to it by the insured (or by someone in his behalf) of a certain premium or premiums—conditioned usually as to amount by the life expectancy of the insured as measured by mortality tables and as usually conditioned by the insured's state of health as revealed by medical examination[4]—*assumes an immediate hazard of loss* to itself and *creates for a third-party beneficiary an immediate estate* in a fixed amount by agreeing to pay a given sum (which may be greatly in excess of the premiums actually paid) upon the happening of a particular event—that of death—which in turn is contingent upon the duration of the life of the insured.[5] .

In the light of this definition, the instant endowment policy has all the characteristic elements of life insurance. In consideration of certain premiums to be paid, the insurer *assumed an immediate hazard of loss* and *created an immediate estate* in the wife of the insured. If the insured dies at any time prior to the expiration of the 15-year maturity period, the insurer will at once be indebted to the beneficiary for the face value of the policy, even though it has received but a single premium. Both the risk and the estate thereby created are contingent upon death, and the premium consideration therefor is gauged in amount by the insured's life expectancy as measured by mortality tables and as revealed by medical examination. By these earmarks, the endowment policy prior to its maturity constitutes life insurance.[6]

---

[4]Nonmedical policies are recognized. See, M. S. A. 61.24.

[5]1 Appleman, Insurance Law and Practice, § 83; 25 Wd. & Phr. (Perm. ed.) 260; In re Walsh (D. C.) 19 F. Supp. 567.

[6]See, State ex rel. Thornton v. Probate Court, 186 Minn. 351, 356, 243 N. W. 389, 391; Commonwealth v. Metropolitan L. Ins. Co. 254 Pa. 510, 98 A. 1072; In re Walsh (D. C.) 19 F. Supp. 567; Carroll v. Equitable L. Assur. Society (D. C.) 9 F. Supp. 223.

Plaintiff contends, however, that, taking the endowment policy as a whole, it is, nevertheless, primarily an investment or savings contract—entered into for the purpose of creating an estate for the insured—in which the life insurance features for the protection of the beneficiary are purely incidental and in any event not controlling as to the policy's cash-surrender value. It is asserted that the beneficiary's interest is not merely contingent upon the death of the insured prior to maturity, but, insofar as that interest is vested, it is at all times prior to maturity subject to being divested through the possible exercise by the insured of his reserved option and right to withdraw the policy's cash-surrender value.[7] The option to withdraw the policy's cash-surrender value, it is contended, is a vested property right for the sole benefit of the insured, which by its nature and purpose makes the policy predominantly nothing more than an investment savings contract wherein any genuine life insurance protection for a beneficiary is merely incidental.

We cannot agree with such undue emphasis upon the cash-withdrawal feature. After all, there is little difference between an ordinary life and an endowment policy in this respect. Under either type of policy, the cash-surrender values ordinarily may be withdrawn whenever the insured so desires. We have only the difference that by the terms of an endowment policy its cash value becomes automatically payable to the insured at the time of its maturity when the beneficiary's protective interest has come to an end. We are concerned, however, with the dominant features of the endowment policy *prior to its maturity* when it is still in full effect as to both the beneficiary and the insured.[8]

[7] As to whether beneficiary's interest is a mere expectancy, a contingent one, or a vested right subject to being divested by the act of the insured in exercising his right to change beneficiaries or to withdraw the cash-surrender value, see Vance, Insurance (2 ed.) pp. 546-557, 559-569.

[8] Decisions have been cited which involve the rights of a creditor with respect to endowment policies that have matured, so that at the time of attachment the proceeds had already vested in the debtor insured. See,

During the prematurity period, it partakes primarily of a life insurance contract for the protection of dependents, and the accumulation of savings is then merely incidental.[9]

Our conclusion that an endowment policy, by virtue of its nature prior to maturity, is life insurance and as such is subject to the provisions of §§ 61.14 and 61.15, which give beneficiaries a preferred right to its proceeds over the claims of the insured's creditors, is in accord with the legislative intent as revealed by the history, language, and purpose of the legislation. In 1892, or three years prior to the original enactment of these sections, Mr. Justice Mitchell in State ex rel. Clapp v. The Federal Inv. Co. 48 Minn. 110, 111, 50 N. W. 1028, said:

"* * * The contract of life insurance, or of insurance upon a life, in the ordinary form, is a contract to pay a certain sum of money on the death of the insured. Another form, known as 'endowment insurance,' is a contract to pay a certain sum to the insured if he lives a certain length of time, or, if he dies before that time, to some other person indicated. *In either of these forms the contract is, strictly speaking, an insurance on the life of the party, although the latter is generally denominated 'endowment' insurance."* (Italics supplied.)

Undoubtedly the import of a decision so recent in time was familiar to the lawmakers, so that when they used the words in the original act that *"Every policy of life insurance made payable to or for the benefit of a married woman, * * * shall inure to her separate use and benefit,"* they intended to include endowment policies. See, L. 1895, c. 175, § 71. It is further evident that the legislature has for many years regarded and treated endowments as life insurance. M. S. A. c. 61, of which §§ 61.14 and 61.15 are a part, is entitled

---

Talcott v. Field, 34 Neb. 611, 52 N. W. 400. These decisions are not in point and need not be discussed.

[9]As to difference between life insurance contracts, inclusive of endowments, and annuity contracts on the other hand, see In re Walsh (D. C.) 19 F. Supp. 567; State ex rel. Thornton v. Probate Court, 186 Minn. 351, 243 N. W. 389.

Life Insurance. Section 61.27 thereof (see, M. S. A. 1945), which was in effect when the instant endowment policy was issued (see, L. 1947, c. 182, for repeal and enactment of new sections), prescribed the exact form to be used for endowment policies. In § 61.30 of the same chapter, an insurance company desiring to deviate from the policy forms of § 61.27 was authorized to do so in language reading in part as follows:

"No policy of *life insurance* in form other than as provided in section 61.27 shall be issued in this state, * * * unless the same shall contain the following provisions:" (Italics supplied.)

See, Shank v. Fidelity Mut. L. Ins. Co. 221 Minn. 124, 21 N. W. (2d) 235. In short, throughout the years endowment policies have been uniformly treated by the legislature as life insurance.

It is also to be noted that §§ 61.14 and 61.15 are remedial statutes enacted for the public good to effectuate the beneficent purpose of protecting a debtor's dependents by giving them a preferred status over his creditors as to the proceeds of a life insurance policy upon his life; as such, these statutes are to be given a liberal construction to accomplish their intended purpose. See, Grimestad v. Lofgren, 105 Minn. 286, 291, 117 N. W. 515, 517, 17 L.R.A.(N.S.) 990; Annotation, 164 A. L. R. 914. Insofar as such dependents are the beneficiaries, the insurance proceeds by statutory command inure to their separate use and benefit and are exempt from seizure by such creditors. It is elementary that statutes are to be interpreted and construed in keeping with the object to be attained. § 645.16. If we were to hold that the cash-surrender option of the insured, or any other interest of the insured under the policy prior to its maturity, is a property right which is not exempt, but is available to the insured's creditors, the protective benefits would be wiped out, and we would thereby defeat the statutory purpose. See, 22 Am. Jur., Exemptions, § 75. In Murphy v. Casey, 150 Minn. 107, 109-110, 184 N. W. 783, 784, this court said:

"While it is true that the insured may cash in his policy without regard to the wishes of the beneficiary, that reserved right, since the

insurance was effected and taken out for the benefit of the latter, to give force and effect to the statute, *must*, as to creditors seeking to exercise it in the place and stead of the insured, *be deemed and held subordinate to the rights of the beneficiary.* There are no sound reasons either in morals or in equity and good conscience why the creditor, to the detriment of the beneficiary, should be given the right and privilege of the insured in such cases. No credit is extended to the insured on the faith of the insurance, for all persons dealing with him are bound to know the law, and that money to become due thereon when payable to a third party is exempt from their claims. The statute is wise in its purpose, securing as it does after the death of the insured pecuniary aid and assistance to the beneficiary, usually some one who is dependent upon the insured for support, and should not be frustrated or impaired by opening the door to those who have no just or equitable claim to the money.

*   *   *   *   *

"* * * *To extend to the creditor the option to surrender the policy for the cash value, would wipe out the rights of the beneficiary altogether.* And to award to the creditor the insured's contingent interest, to come into life only in the event he outlived the beneficiary, would throw the whole contract relations of the parties into confusion, and prejudice and finally in all probability wholly destroy the benefit intended by the law to protect in the beneficiary. With the insured's rights turned over to the creditor he naturally would have no further interest in keeping the policy alive by the payment of premiums; while the creditor would willingly let the policy lapse for nonpayment, accepting the lapsed value in discharge of his claim."[10]  (Italics supplied.)

By its terms, the policy provides that dividends are available for the payment of premiums or for the purchase of additional insurance; but if they are not so used or withdrawn they may be left to accumulate as an interest-bearing savings fund *which may be added to the policy proceeds payable upon death* or maturity. Clearly,

---

[10]Cf. Remley v. Travelers' Ins. Co. 108 Minn. 31, 121 N. W. 230.

these dividends, as well as any interest thereon, are factors which contribute to the preservation and the strengthening of the beneficiary's interest. It follows that the only reasonable interpretation to be given to §§ 61.14 and 61.15 is to hold that all accrued dividends, as well as any interest thereon, are part of the insurance policy's proceeds, to which a beneficiary is entitled for her separate use and benefit to the exclusion of any claim by the insured's creditors.[11]

In holding that, in the absence of the exercise by the insured of his reserved option to withdraw the cash-surrender value and any unpaid dividends, the proceeds of an endowment policy—inclusive of the cash-surrender value and unpaid dividends with accrued interest—which are payable to the insured's dependents as beneficiaries in the event of his death prior to the maturity of the endowment, are, pursuant to §§ 61.14 and 61.15, exempt from the claims of the insured's creditors, we are following the weight of authority and the sounder judicial opinion which refuses to make a distinction between endowments and other forms of life insurance.[12]

Plaintiff further asserts that §§ 61.14 and 61.15 create an exemption which, being unlimited in amount, is unreasonable and therefore unconstitutional in contravention of Minn. Const. art. 1, § 12. It should be borne in mind that these statutes do not purport to give the debtor insured any exemption whatever as to his creditors. The exemption created is given only to the beneficiary and for her sole benefit. See, Bailey v. Wood, 202 Mass. 549, 89 N. E. 147, 25 L.R.A.(N.S.) 722. Strictly speaking, we do not have an exemption in the usual or constitutional sense. Farmers State Bank v. Smith, 36 N. D. 225, 162 N. W. 302. Fundamentally, what has been referred to as an exemption is rather in the nature of a

[11]See, Francis H. Leggett & Co. v. Frank, 161 Misc. 613, 291 N. Y. S. 681; In re Keil (2 Cir.) 88 F. (2d) 7; Robro Realty Corp. v. Lazarus, 161 Misc. 610, 291 N. Y. S. 678, for interpretation of statute with substantially similar wording.

[12]22 Appleman, Insurance Law and Practice, § 14582; 84 U. of Pa. L. Rev. 236-247; Holden v. Stratton, 198 U. S. 202, 25 S. Ct. 656, 49 L. ed. 1018; see, 21 Minn. L. Rev. 857; 9 Minn. L. Rev. 279; 6 Minn. L. Rev. 304; 22 Am. Jur., Exemptions, § 72.

preference which is given to the beneficiary over the creditors of the debtor insured as to insurance proceeds. In the creation of such preference, § 61.14 protects the creditors fully by specifically providing that *"All premiums paid for insurance in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy, * * *."* In the instant case the issue of fraud is absent. Plaintiff, however, insists that, insofar as the cash-surrender value and dividends with interest are concerned, it is actually an unlimited exemption as to the debtor insured, in that he enjoys the right at all times to withdraw and appropriate to his own use such cash-surrender value, as well as the dividends and interest. What plaintiff wholly overlooks is that, *in the absence of the exercise by the insured of his option to take the cash-surrender value and dividends of a policy that has not matured,* there is no debt due and payable by the insurer to the insured, and *that the right of the insured to create such a debt by the exercise of the option* is not an asset available to creditors, but *is a right purely personal to the insured alone.* Isaac Van Dyke Co. v. Moll, 241 Mich. 255, 217 N. W. 29, 57 A. L. R. 692; Annotations, 44 A. L. R. 1188, 57 A. L. R. 695. An option of this nature has been aptly described as an irrevocable offer made to the insured by the insurer, but in no way binding upon the insurer until acceptance be had. Isaac Van Dyke Co. v. Moll, *supra.* Furthermore, in the absence of fraud, it has been held that a court of equity, at the instance of a creditor, would not be authorized to compel the exercise of an option whereby the rights of the beneficiary would be destroyed. National Bank of Commerce v. Appel Clothing Co. 35 Colo. 149, 83 P. 965, 4 L.R.A.(N.S.) 456, 117 A. S. R. 186. As a general rule, a policy is not to be regarded as liable to seizure under any form of judicial process against the insured so long as the duty of the insurer to pay is subject to any contingency or to any condition precedent. Vance, Insurance (2 ed.) § 161; 84 U. of Pa. L. Rev. 236, 243, 244. It follows that an unreasonable exemption in violation of Minn. Const. art. 1, § 12, does not arise with respect to insurance policy proceeds which are not due and payable to the insured and have not vested in him and which,

in the absence of the exercise of his strictly personal right of option, will not become due during the policy's prematurity period. In another respect, there is no basis for holding that these beneficent statutes are unconstitutional as creating an unreasonable exemption. As was pointed out in Bailey v. Wood, 202 Mass. 549, 552, 89 N. E. 147, 149:

"* * * His life constitutes no part of the assets of his estate and nothing therefore is taken from his creditors by an insurance upon it in favor of his wife or the assignment to her of a policy of insurance already issued, though it may be true, as contended by the plaintiff, that, except for the statutory exemption in her favor, the policy like any other contract entered into by him and inuring to his benefit would constitute or could be found to constitute a part of the assets of her husband's estate. * * *

"* * * If a man's life were property which his creditors could seize, there might, perhaps, be something in the contention. But, as already observed, the statute provides, in effect, that so much of the insurance as consists of property of the debtor which he has put into it by way of premiums in fraud of his creditors shall inure to them. Subject to this there can be nothing unreasonable in providing that one may insure his life to any amount that he chooses for the benefit of his wife and children, or that he may assign to his wife policies already issued to him."

In considering the constitutionality of §§ 61.14 and 61.15, we have not overlooked that this court, upon another ground, namely, by way of analogy to a trust, and without particular consideration of the cash-surrender value, has in In re How, 61 Minn. 217, 63 N. W. 627 (reversing upon reargument our previous holding on that issue in 59 Minn. 415, 61 N. W. 456), held an earlier and somewhat similar statutory provision (L. 1885, c. 184, § 17) to be constitutional as not creating an unreasonable exemption in contravention of the Minnesota constitution.

■ Plaintiff further urges that §§ 61.14 and 61.15 are unconstitutional as creating with respect to exemptions a discriminatory

classification among creditors as to the savings and investment represented by the cash-surrender value and the dividends of the policy, in contravention of Minn. Const. art. 1, § 12. There is no merit in the contention. In the first place, as already pointed out herein, the cash-surrender value and the dividends which have not come due, in the absence of the exercise by the insured of his option, do not constitute assets upon which any exemption, reasonable or otherwise, can be asserted as to the debtor insured. Secondly, insofar as any preference by way of an exemption is given to the beneficiary, as a dependent of the insured, all creditors are treated alike. The preference given to the beneficiary is not a preference accorded to another creditor but to a dependent. The element of discriminatory classification in a constitutional sense is wholly absent.

The order of the trial court is affirmed.

Affirmed.

