## MALCOLM McNEILL *v.* C. E. ROACHE.

1. CHANCERY PRACTICE—ATTACHMENT AND GARNISHMENT.—R. as creditor of M., deceased, instituted suit by bill in equity against M., as a non-resident, by attachment of the debt due by S. R. alleges that the estate of M. is indebted to him in the sum of $2,500.00. That P. is administrator, and that the estate is insolvent, and that he took and converted an obligation of M. & H. to his own use, for $5,000.00. Prays an attachment against the effects of M., and garnishment of S., his debtor. The allegations of the bill are denied by the answer. *Held:* That to authorize this proceeding under the statute, the debtor of complainant's creditor must be a non-resident of this State, and have either lands and tenements within the same, or some other person within the State who is indebted to him, or has effects of his in his hands. Rev. Code 1857, p. 549, art 60 ; Trotter v. White, 10 S. & M., 607 ; Freeman v. Malcolm, 11 S. & M., 53 ; Freeman v. Guion, 11 S. & M., 58.

2. SAME—CASE IN JUDGMENT.—The answer of the garnishee states that he gave to M. three notes, amounting to $20,000.00, and *does not know* whether M. has negotiated the notes, or any of them ; but if he has so transferred them, he owes them to the holder, and not to M. He should not be charged, because it does not *appear affirmatively* that he was, when garnisheed, indebted to the defendant. Unless that fact so appear, it is insufficient, and no judgment should be rendered against him.

Appeal from the chancery court of Coahoma county. Hon. E. STAFFORD, chancellor.

The facts of this case are very fully set forth in the opinion of the court.

It is assigned for error.

1. The court erred in refusing to discharge the attachment herein, and dismiss the bill on the motion of appellant.

2. The court erred in rendering the final decree herein rendered. The bill should have been dismissed.

*Nugent & Yerger*, for appellant :

The attachment should have been discharged on motion of defendant in the court below. The bill was not sworn to, and the circumstances were not such as to authorize the issuance of the writ. Rev. Code 1857, p. 549, art. 60, p. 372, art. 1 and 2 ; Trotter v. White, 10 S. & M., 607 ; Freeman v. Malcolm, 11 S. & M., 53 ; Sims v. Talbot, 27 Miss., 487.

The motion to dismiss the bill should have been sustained. There was no proof of fraud or collusion between the appel-

lant and the administrator of the estate, by whom alone, in such exigency, the suit could be maintained. 2. Williams' Executors, pp. 183, 229; Hardy v. Thomas, 23 Miss., 544; Muir v. Trustees, etc.; 3 Barb. Ch., 477. And this is rendered clear from the fact that the appellant claimed the note as his own, because it was given for the rent of his plantation. He never had possession of the note himself, and simply directed the attorney in whose hands it was found several months after Thomas H. McNeill's death, to collect it by law if he could. This was done under color of title, to say the least of it, and the appellant could not, therefore, be charged as an executor in his own wrong. 1 Williams' Executors, p. 231; Densler v. Edwards, 5 Ala., 31; O'Reilly v. Hendricks, 2 S. & M., 388.

The final decree rendered in the case is erroneous. The note sought to be charged against appellant was given for the rent of his plantation which had been in the occupancy of his son. The father lived in Kentucky and his son on his place in Mississippi. It is undisputed that the property belonged to the appellant, and there is no proof that his son was his tenant in possession. Now, are the facts sufficient to charge him even if there had been proof, or even presumption of tenancy?

Several months after the death of intestate, the appellant came to Mississippi, discovered, accidentally, that the note was in the hands of Gen. Chalmers, and upon a conference with him, concluded, by his advice, that the note was rightfully his. With all this, he did not take the note in his possession, but directed Gen. Chalmers to collect it. The makers of the note are insolvent, and the question of title to it is left by the pleadings to be proven. *Prima facie* the note belonged to the appellant, and it must be presumed that his son was his agent purely in effecting the lease to Mitchell & Hampton.

*White & Chalmers*, for appellee.:

The prayer of the bill is, that Malcolm McNeill be com-

pelled to pay into court, the value of the property carried off by him, and that the same be ratably divided among the creditors of Thomas H. McNeill's estate; all of whom are invited to come in and join the suit, and participate in its fruits. A number of creditors availed themselves of the offer and filed their petitions to be made parties, which is done. Parks, the administrator, fails to answer. Severson, the garnishee, answers, admitting his indebtedness to Malcolm McNeill, and Malcolm McNeill denies all the allegations of the bill, except as to the five thousand dollar note of Mitchell & Hampton.

This he admits that he got, and says that the same was at the time of his answer in the hands of his attorney, for collection. He claims that said note belongs to himself, because, although payable to his son, it was given for the rent of a plantation which belonged to himself. He subsequently moved to have the attachment dismissed, which motion was overruled.

The testimony in the case is very meager, but seems to establish these facts. That Thomas H. McNeill had lived on the plantation in question for many years, whether it was in fact his own or the property of his father, nowhere is made apparent.

There is not a particle of proof on the subject. Even in his own deposition, Malcolm McNeill says nothing about the ownership of the land.

The only allusion to it, is in his answer. Thos. H. McNeill, as appears, had such a note, or obligation, at the time of his death, and in it the place is spoken of as my (his) Dogwood place. The instrument is payable to Thos. H. McNeill.

It did fall into the hands of M. McNeill, or his attorneys, at the death of Thomas McNeill. Some money, if not the whole note, seems to have been collected.

It is in proof that the whole might have been, and ought to have been, collected, by taking proper steps, when it fell due, and after it was in the hands of Malcolm McNeill's lawyers.

No other property is traced into the father's hands belonging to the son, and the contest is over the proceeds of the note.

Upon final hearing, the Chancellor gave a decree against defendant, Malcolm McNeill, for the principal and interest of the note, $6,400.00. From this decree he appeals. We can imagine no possible error in refusing to dismiss the bill. McNeill was a non-resident having a debt due him in this State, and if there was any equity on the face of the bill, the attachment ought certainly to have been maintained until the final hearing. This question is now wholly unimportant, and is swallowed up in the one as to the correctness of the final decree.

If the decree is proper, we have no longer any use for the attachment.

If it is improper, and we are not, upon the merits of the case, entitled to a decree against defendant, then the attachment is equally useless and wrongful. Is the final decree proper, and was the defendant McNeill justly chargeable with the amount of the note? We think so, for several reasons. The note was payable to Thos. H. McNeill; was unassigned, and was in his possession at the time of his death. *Prima facie*, then, it was the property of his estate.

The father seems to rest his claim to it, upon the ground that he was the owner of the plantation, for the rent of which, it was given.

If it be true that this made it his property (which we will show directly, that under the circumstances of the case, it was not), he was certainly bound to prove it. It was an affirmative fact, upon the establishment of which his sole claim to the note is based.

Certainly the burden of proving it devolved upon him. Every presumption of law declared it to be the property of his son's estate. He does not bring forward a particle of proof to rebut these presumptions. Upon the familiar principles then, that he who grounds a right upon the assertion of an affirmative issue, must establish it by proof, we contend

that the decree is correct.   More especially is this so in a case like this, where every presumption of law points to Thos. H. McNeill, to whom it was payable, and in whose possession it was, as the owner of the note.   But we go farther and say, that even if it had been established that Malcolm McNeill was the owner of the land, the note still belonged to his son.   Thos. H. McNeill had occupied and treated the land as his own for many years.   The lowest view that can be taken of his interest in the land, is that of a tenant at will, and belongs to that class of tenancies at will known as tenancies from year to year.   Washburn, Real proper., p. —.

Such tenancies by provisions of Revised Code of 1857, p. 344. art, 21, which was in force at that time, could only be terminated by two months' notice.

A tenancy at will, will not be confounded with one by sufferance.

The latter is when the term has expired, and the lessor permits the lessee to remain over.   In such a case no notice is required to terminate the tenancy.

The former is where the tenancy is orginally for an indefinite and indeterminate period.   In such a case notice is required.   There is no pretense that any such notice had ever been given by Malcolm McNeill to T. H. McNeill in this court.   That the rent does not belong to the owner of the soil where a tenancy at will has sub-let a portion of it to another we refer to Austin v. Thompson, 45 N. H., 115, and authorites there cited.

We would urge too, the great injustice and fraud of a father being allowed for years to hold out his son, to the public, as the owner of large and valuable lands, and thus enable him to contract debts, as in this case, amounting to many thousands of dollars, and then come in at his death, and not only claim the lands upon the faith of which the credit had been given, but the *rents* of the lands also.

We insist that the decree of the court below should be affirmed,

PEYTON, C. J., delivered the opinion of the court:

C. E. Roache as a creditor of Thomas H. McNeill, deceased, instituted his suit in the chancery court, against Malcolm McNeill, as a non-resident of the State, by an attachment of the debt due by one C. S. Severson to said non-resident. The bill alleges that the estate of Thomas H. McNeill is indebted to the complainant in the sum of $2,500.00, and interest. That W. G. Parks is administrator of said estate, which is insolvent, and that said Malcolm McNeill took and converted to his own use an obligation of J. A. Mitchell and J. M. Hampton, to said decedent, for the sum of $5,000.00, and prays an attachment against the personal effects of said non-resident in this State, and for garnishment of said Severson, his debtor, who is a resident of this State.

Upon final hearing of the cause upon the bill, answer and proofs, the court declared that the said Malcolm McNeill was indebted to the estate of said Thomas H. McNeill deceased, in the sum of $6,409.17, and decreed that the said C. S. Severson pay the same within sixty days.

From this decree the said Malcolm McNeill appeals to this court.

The allegations of the bill charging the appellant with intermeddling with the estate of the decedent and taking and disposing of the claim of the estate against Mitchell and Hampton are promptly met and denied by the appellant in his answer, which has not been overcome by the testimony. It seems that the obligation got in some way into the hands of Gen. Chalmers, and remained in this State, and should have been taken into the possession of the administrator of said estate, and been collected, if possible, by him, and accounted for to the creditors of the estate. The proof does not show such an intermeddling with the estate of the deceased by the appellant as would make him an executor *de son tort.*

To authorize this proceeding under the statute, the debtor of the complainant's creditor must be a non-resident of this State and have either lands and tenements within the same, or some other person within the State who is indebted to

him, or has effects of his, in his hands. Rev. Code. 1857, p. 549, art. 60; Trotter v. White, 10 S. & M., 607; Freeman v. Malcolm, 11 S. & M., 53, and Freeman v. Guion, 11 S. & M., 58.

In this case, the estate of the decedent was the debtor of the complainant, and in the course of administration in this State, and there are no grounds stated in the bill for the interposition of equity.

But even if the appellant were the complainant, the decree against C. S. Severson cannot be sustained upon his answer, in which he says that he gave to the said Malcolm McNeill three notes, amounting to $20,000.00, and does not know whether the said McNeill has negotiated the said notes, or any of them, but if he has done so, then this defendant owes the amount of the note, or notes, so transferred to the holder, and not to the said McNeill.

While the notes were current as negotiable paper, it is usualy very difficult for the maker to say whether at the time of the garnishment, they were still the property, or in the possession of, the payee; if he answers that he does not know whether they were so or not, certainly he should not be charged, because it does not *appear affirmatively* that he was, when garnisheed, indebted to the defendant; and unless that fact so appear, no court can rightfully render judgment against him; the most that can. be claimed is, that he *may* be so indebted, which is manifestly insufficient; the great fact necessary to charge him is not shown, but only conjectured, the whole matter is in doubt, and while in doubt, the court cannot with truth record that the garnishee is found to be indebted to the defendant, and unless that be found by the judgment of the court, there is no ground for charging the garnishee.    Drake on Attachment, 410, § 584.

Upon the whole, we think the proceeding by attachment in this case, is not authorized by the statue.

The decree must, therefore, be reversed, and the bill dismissed.