Marquis, Appellee, *v.* The New York Life Ins. Co., Appellant.

(No. 7594—Decided June 23, 1952.)

*Messrs. Cowell & Fletcher* and *Mr. Frank Espohl,* for appellee.

*Messrs. Taft, Stettinius & Hollister,* for appellant.

MATTHEWS, J. This is an appeal from a judgment for the plaintiff in an action under Section 11851, General Code, against defendant, for failure to comply with an order against it as a garnishee made in an action in which the plaintiff in the present action was plaintiff and Gordon Marquis was defendant.

The plaintiff in her petition in the present action alleged that she instituted the prior action to recover judgment against Gordon Marquis in the sum of $1,625, and that in that action an order of attachment and garnishment was issued and duly served upon The New York Life Insurance Company as garnishee, which answered, admitting that it owed Gordon Marquis $733.43. Whereupon the court ordered the garnishee to hold such sum subject to the further order of the court, and thereafter the court entered judgment against Gordon Marquis in plaintiff's favor for $733.43, and ordered the garnishee to pay that amount into court. The plaintiff alleged also that the garnishee, The New York Life Insurance Company, failed and refused to pay the sum into court. The plaintiff prayed for judgment for $733.43, with interest.

The defendant answered that petition by admitting that plaintiff had instituted an action against Gordon Marquis, as alleged by her, that an order of garnishment was issued thereon, and that it had filed an answer as garnishee. The defendant specifically denied that it had admitted owing Gordon Marquis $733.43 or any other sum and generally denied all other allegations.

At the trial it was disclosed that the essential facts

were uncontroverted. It was agreed that the defendant had issued a policy upon the life of Gordon Marquis for $10,000, payable to him if he should live to be 65 years of age, and if he should die before reaching that age to his mother, or if she should be dead, then to his father, and that the property rights of the insured under this policy prior to its maturity on his reaching 65 years of age were the subject matter of this controversy. It is clear that nothing happened or could happen in the action in which this defendant was garnishee only, and had denied that it was indebted, that would bar it from raising the issue that it was indebted, in this action under favor of Section 11,851, General Code.

The policy was placed in evidence by stipulation of the parties. The only circumstances under which the defendant obligates itself to pay to the insured anything pending the maturity of the policy are set forth in the following provisions of the policy:

"Loan Provisions

"After three full years' premiums have been paid and before default in payment of premium or within the grace period, the company upon receipt of this policy and a loan agreement satisfactory to the company, will advance to the insured on the sole security of this policy, any amount, which, with interest, shall be within the cash value of this policy."

"Non-forfeiture Provisions

"In event of default of payment of premium after three full years have been paid, the following benefits shall apply if the premium remains unpaid and the automatic premium loan provision is not applicable:

"(a) Non-Participating Extended Term Insurance:

[Under this title are provisions for automatic nonparticipating extended term insurance in the absence

of an election by the insured to take the cash value or participating paid-up insurance.]

"(b) Participating Paid-Up Insurance:

[Under this heading are found the terms and conditions under which the insured may elect to take participating paid-up insurance.]

"(c) Cash Value: Within three months after such default, but not later, the insured may elect in place of such non-participating extended term insurance or participating paid-up insurance to surrender this policy and all claims hereunder and receive its cash value as at date of default less an indebtedness hereon. "* * *

"4. Cash Value Of Fully Paid Policy.

"If this policy shall have become fully paid by its terms, the insured at any time may surrender this policy and all claims hereunder and receive its then cash value less any indebtedness hereon."

There was no evidence that the insured or any one else had surrendered this policy to the defendant, or that defendant had possession of the policy. There was no evidence that the insured had elected to receive the cash value in lieu of participating extended term or participating paid-up insurance.

The question presented is whether under those circumstances the court was right in entering judgment against the defendant on its admission that at the time the notice was served on it as garnishee the policy had a cash surrender value of $733.43.

The plaintiff-appellee relies upon two Ohio cases and one Nebraska and one New York case. Neither of the Ohio cases involved the question here presented.

In *Hoffman* v. *Weiland*, 64 Ohio App., 467, 29 N. E. (2d), 33, the insurer admitted the indebtedness and the only question argued or decided was whether that

indebtedness was exempt under Section 9394, General Code, in an action by the divorced wife against her unmarried former husband, who had no children or other dependents. The court held it was not exempt. If any such question as here presented lurked in the facts of that case, it was not flushed into the open. The cash surrender value was treated as an unconditional matured debt. The insurer did not plead any conditions.

In *Foulks* v. *Foulks*, 49 Ohio App., 291, 197 N. E., 201, the question was whether the court, in an action for divorce, alimony, and division of property, had jurisdiction to, and should under the circumstances award to the wife a certain 20-year endowment policy upon the life of the husband, in which he was the named beneficiary. The court listed the various alternative rights under the policy, held that the husband had these rights and that the rights were property, and found that the trial court did not err in ordering him to assign the policy to the wife. The court said nothing about the conditions necessary to be performed in order to obtain the cash surrender value. Whatever they were, if any, would inhere in the policy after its transfer to the wife.

And we find no Ohio case that can be said to be in point. In *Orlopp* v. *Schueller, Admr.,* 72 Ohio St., 41, 73 N. E., 1012, 106 Am. St. Rep., 583, the court held that the property or money held by an executor or administrator in his representative capacity cannot be reached by garnishment process in an action against an heir or legatee before an order of distribution has been made. And, at page 59, the court said: "Until such time the executor or administrator is not the *debtor* of the heir or legatee, nor is it certain that he is the custodian of any property belonging to him."

*Talcott* v. *Field,* 34 Neb., 611, 52 N. W., 400, 33 Am. St. Rep., 662, did not involve the garnishability of the cash surrender value of an unmatured policy. The policy had matured, the total insurance had been paid to, and invested by the insured's wife. The question was whether, under the circumstances of that case, the property in the hands of the wife was subject to the husband's debt. It is apparent that case is no guide to a decision of whether the cash surrender value of an unmatured policy is subject to garnishment. That it is no guide is pointed out in the annotation to the case of *Farmers & Merchants Bank* v. *National Life Ins. Co.* (161 Ga., 793, 131 S. E., 902), in 44 A. L. R., 1184, a case in which it was held that the cash surrender and cash loan value of a policy of life insurance accruing at the end of a specified tontine period is not subject to garnishment by creditors of the insured. In that case, plaintiff's counsel relied on a quotation from 28 Corpus Juris, 166, in which, *inter alia,* it was stated that "a life insurance company's liability for accrued cash accumulations is subject to garnishment." The court said that this part "apparently" supported the plaintiff's position, but that other parts of the quotation led to a contrary conclusion. It is interesting to note that in 38 Corpus Juris Secundum, 317, 318, Section 110, the whole section on "life insurance" subject to garnishment has been revised and given this bold type heading: "Unless such property is exempt the proceeds of a life insurance policy are subject to garnishment. Benefits which can be realized on a life policy prior to insured's death can be garnisheed *only if all the conditions to such benefits have been fulfilled.*" (Italics supplied.)

And the sentence that the court said apparently supported the plaintiff was amended so as to read: "A

life insurance company's liability ˙for accrued cash accumulations is subject to garnishment *where such accumulation is unconditionally payable.*" (Italics supplied.)

Finally, counsel rely on *Foley* v. *Equitable Life Assur. Society,* 290 N. Y., 424, 49 N. E. (2d), 511. There were two kinds of policies involved in that case. One kind required the automatic conversion into a paid-up annuity after 65 years of age, upon default and failure to elect to take cash surrender value without any right to amortize the annuity. The other contained an express option to surrender the paid-up annuity for its cash value at any anniversary of the date of the policy.

As to the first kind, there had been a default and no election to take the cash surrender value, and so the policies became fully paid-up annuities without the right to surrender the paid-up annuity and receive its amortized value.

As to the second class, there was this right to surrender and receive the cash surrender value both before and after its conversion into a paid-up annuity, and the court held that this could be reached by garnishment. It will thus be seen that the court as to these was dealing with policies that had matured and not with benefits that accrued prior to maturity.

Dispensing with the surrender of the policies under such circumstances is determined by the same principles that apply in any other action upon a fully matured obligation evidenced by a written instrument such as a promissory note. That principle has no application to a written document evidencing unmatured obligations and rights.

We think it is correct so far as a debtor is concerned, and generally speaking, that all his property

of whatever nature is subject to the payment of his debts unless there is some express statutory exemption. But we are not concerned here with the protection of the rights of Gordon Marquis, the judgment debtor. It is the garnishee who is resisting this order directing it to pay on the ground that at this time and at the time the notice of garnishment was served it owed nothing.

In 38 Corpus Juris Secundum, 227, Section 26, the test is stated as follows: "The most comprehensive test of liability to garnishee process is whether or not the person sought to be charged could have been sued by the defendant."

Of course that is not an infallible or universal test. There are cases where, because of the character of the persons or the nature of the property, the test would be inappropriate. We believe, however, there is nothing in the case at bar that calls for any other test.

In 38 Corpus Juris Secundum, 290, 291, Section 87, it is said:

"In the absence of statute to the contrary, a debt which is uncertain and contingent, in the sense it may never become due and payable, is not subject to garnishment."

And in 4 American Jurisprudence, 682, 683, Section 200, we find the same thought:

"Although as a general proposition, a debt presently and unconditionally owing, but not payable until a future date, is subject to attachment or garnishment, where a further performance of a contract is necessary before the money payable thereon becomes due, the view is generally taken that the payment is conditioned on the performance, and is not subject to garnishment until the condition has been fulfilled. The rule is said to rest on the view that 'as a plaintiff can

have no greater right against the garnishee than the defendant would have, and can occupy no better position with respect to the garnishee than the defendant could in a suit brought by him against the garnishee, it follows that where a contract between the defendant and the garnishee has not been fully performed by defendant at the time of attachment by plaintiff, the garnishee is not chargeable.' ''

Ohio, so far as it has spoken, follows the general rule. In 4 Ohio Jurisprudence, 120, 121, Section 85, it is stated:.

''However, the controlling characteristic of the remedy by garnishment is, that the liability of the garnishee must originate in, and be dependent on, contract. Hence, with the exception of conveyances, transfers, or agreements to defraud creditors, garnishment cannot be employed to reach or subject any debt or demand, which the debtor, suing in his own name, could not recover in an action *ex contractu*. Credits not yet due are subject to attachment upon certain grounds. But the obligation to pay ultimately must at the time service is made on the garnishee be fixed without reference to future services or considerations. 'Credit' and 'debt' are used interchangeably according to the point of view.''

Now, before the insured was entitled to have the cash surrender value of this policy, it would have been necessary for him to prove: (1) That the premiums were in default, (2) an election by the insured to accept the cash value in lieu of non-participating extended term insurance, (3) the surrender or tender of surrender of the policy, and (4) finally, if the policy contained the automatic premium loan provision, no right to the cash surrender value existed in any circumstances, at least so long as the election to that effect contained in the application remained unrevoked.

These provisions of the policy conditioned and limited the defendant's liability, were of value to it, and would be destroyed by an order directing it to pay now what it is under no obligation to pay and conceivably might never be bound to pay. The automatic premium loan provision might be invoked by the insured, and after its exhaustion, all liability on the policy might be extinguished by default in payment of premiums.

We have been cited to no case holding under the circumstances here presented that a garnishment would lie. The authorities already commented on lend no support to the thesis. Our own investigation has disclosed no such case. There are many recent cases and their uniform tenor is that such a contingent liability furnishes no basis for garnishment. One of the more recent cases and typical of all is *Ford* v. *Mutual Life Ins. Co. of New York*, 194 Miss., 519, 13 So. (2d), 45. We quote from the opinion at page 527:

" 'The obligation of the garnishee-defendant to the principal defendant, which is made the jurisdictional basis of the attachment in chancery against the nonresident principal defendant, must be an indebtedness owing *in praesenti* by the said garnishee-defendant to the said non-resident principal defendant, and must be of such a nature that at the time the suit is filed the principal defendant could enforce the said debt against the said garnishee-defendant in a court of competent jurisdiction without regard to, and independently of, complainant's suit or cause of action against the said principal defendant. "It is a general requisite of the right to hold a person as garnishee that, but for the garnishment, defendant would have a right of action against him, for defendant's own use."

See *Howell* v. *Moss Point Furniture Co.*, 136 Miss., 399, at p. 408, 101 So., 559, at page 560; *Russell* v. *Clingan*, 33 Miss., 535; *McNeill* v. *Roache*, 49 Miss., 436; *Dibrell*

v. *Neely,* 61 Miss., 218; *Southern Pac. Ry. Co.* v. *A. J. Lyon & Co.,* 99 Miss., 186, 54 So., 728, 34 L. R. A. (N. S.), 234, Ann. Cas. 1913D, 800; *Bean* v. *Bean,* 166 Miss., 434, 147 So., 306; *Craig* v. *Gaddis,* 171 Miss., 379, 157 So., 684, 95 A. L. R., 1494.'

"The authorities also generally hold that an advancement upon a life insurance policy of the accrued loan value, or less, is not such an obligation as will sustain a suit by the insurance company against the insured-borrower. The insured is entitled to the loan value of the policy as a matter of contractual right; the insurer owes the insured the money and has no right to refuse to advance, or pay, it upon proper request by the insured. The company cannot sue because the defendant could plead and set off the amount as owing by the company to him. The policyholder can pay the debt or not as he desires. If he does not, the policy is forfeited and he is entitled to the excess cash value, if any, of the policy over the advancement to him. The unpaid interest is added to the principal. The Mutual Life Insurance Company could not have obtained a judgment against Parker in this case."

For these reasons, the judgment is reversed and the cause remanded with directions to enter judgment for defendant.

*Judgment reversed.*

HILDEBRANT, P. J., and MATTHEWS, J., concur in the syllabus, opinion and judgment.