Westinghouse Credit Corporation, appellee, v. Robert R. Crotts, appellant.

No. 49778.

(Reported in 98 N.W.2d 843)

October 20, 1959.

James Furey and Leighton A. Wederath, both of Carroll, for appellant.

Edward S. White, of Carroll, for appellee.

Garrett, J.—This is an appeal from an order of the district court requiring defendant to obtain the cash surrender value of

two life insurance policies and apply the same upon plaintiff's judgment.

Appellant relies upon two claimed errors: "I. The Court erred in holding that the defendant's life insurance policies, particularly the cash surrender value thereof, are not exempt to him as against the plaintiff judgment creditor. II. The Court erred in finding that the defendant had any 'property' which could be applied in satisfaction of the plaintiff's judgment."

Judgment was entered against the defendant and after hearing on applications for examination of the judgment debtor the court found and ordered as follows:

"* * * The only disputed question here is whether the policies, or the amount thereon by way of cash value, are exempt, it appearing that Crotts is a resident of Iowa and the head of a family. The applicable statute is section 511.37, Code of 1958. The authorities on this question are not completely satisfactory and not easily understood, but the court is convinced that under the reasoning and statements in the opinion in the case of In re Estate of Tellier, 210 Iowa 20, the policies and the amounts due thereon are not exempt as against the debts of Crotts. It is therefore hereby ordered that the judgment debtor, Robert R. Crotts, proceed forthwith to take such steps as to collect and assign over to the judgment creditor, Westinghouse Credit Corporation, the amounts due and collectible at this time upon the said two insurance policies * * *."

I. This case turns upon the construction to be placed upon section 511.37, Code of 1958, which reads in part as follows:

"Policy exempt from execution. A policy of insurance on the life of an individual, in the absence of an agreement or assignment to the contrary, shall inure to the separate use of the husband or wife and children of said individual, independently of his creditors.

"The proceeds of an endowment policy payable to the assured on attaining a certain age shall be exempt from liability for any of his debts.

"Any benefit or indemnity paid under an accident, health or disability policy shall be exempt to the assured, or in case of his death to the husband or wife and children of the assured, from his debts."

More specifically the language which requires construction is "a policy of insurance on the life of an individual * * * shall inure to the separate use of the * * * wife and children of said individual, independently of his creditors."

■ It is a rule of universal application that exemption statutes shall be liberally construed so as to give effect to their purpose and intention. Scott v. Wamsley, 218 Iowa 670, 253 N.W. 524; Booth v. Propp, 214 Iowa 208, 242 N.W. 60, 81 A. L. R. 19.

■ "Generally, as far as a debtor is concerned, all his property, of whatever nature, is subject to the payment of his debts, unless there is some express statutory exemption." Marquis v. New York Life Ins. Co., 92 Ohio App. 389, 108 N.E.2d 227, 37 A. L. R.2d 261, 262.

■ In this case appellant relies upon and claims exemption under section 511.37 which guarantees that the policies of insurance on his life shall inure to the separate use of his wife and children, "independently of his creditors", in the absence of an agreement or an assignment to the contrary. The evidence does not disclose any agreement or assignment to the contrary; the policies are still in force and effect and therefore, if the statute controls, still inure to the separate use of his wife who is the named beneficiary.

There is substantial support for appellant's position to be found in the second paragraph of section 511.37 which reads "the proceeds of an endowment policy payable to the assured on attaining a certain age shall be exempt from liability for any of his debts." Here the legislature has provided that an assured may take the benefits of his endowment policy without interference whatever by his creditors.

The third paragraph of this section reads "any benefit or indemnity paid under an accident, health or disability policy shall be exempt to the assured, or in case of his death to the husband or wife and children of the assured, [free] from his debts." It will be seen the legislature intended to be definitely liberal in extending protection from their creditors to those who choose to protect themselves and their families by providing insurance against many of the possible vicissitudes of life.

One of the most common forms of insurance contracts insures the life of the husband and father for the benefit and protection of his wife and children. It is not unusual, also, to find in such contracts a provision for a cash surrender or loan value. In most such contracts there also appears a provision that the assured may change the beneficiary at will. It follows, if appellee's position is correct, that in every instance where such a contract is outstanding, creditors can, by garnishment or other appropriate action, proceed to collect debts due them from such assured by appropriating the cash surrender value of the debtor's policies. The statutory provision that "a policy of insurance on the life of an individual * * * shall inure to the separate use of the * * * wife and children of said individual, independently of his creditors" would thus be nullified. There are times when the assureds need the reserve in the cash value of their policies to take care of premiums and preserve their contracts. A policy clearly does not inure to the separate use of the wife and children, independently of creditors, as the statute says it shall, if creditors are allowed to take a substantial part of its value.

There have been, no doubt, instances where, in times of financial stress, policies have been lost to families who permitted creditors to take the cash surrender value of their contracts. The insured parties can make any agreement or assignment they wish but section 511.37 was enacted to grant liberal exemptions where needed and it must be liberally construed.

Attention is directed to section 509.12 which grants complete exemption to "any person insured" or "any beneficiary" in the case of group insurance, and section 512.17 which exempts the proceeds of any beneficiary certificate issued by any fraternal beneficiary association. Section 635.8 provides that, * * * "The avails of any life or accident insurance, or other sum of money made payable by any mutual aid or benevolent society upon the death or disability of a member thereof, are not subject to the debts of the deceased, except by special contract or arrangement, * * *."

Applicable by analogy to this case is the following quotation from In re Estate of Clemens, 226 Iowa 31, 282 N.W. 730; In re Will of Grilk, 210 Iowa 587, 589, 231 N.W. 327, 328:

■ "These statutes, particularly the latter, plainly establish public policy of the state that the avails of life insurance shall be devoted to the benefit of surviving spouse and children, free from payment of debts. These statutes are a part of the exemption legislation of the state, the main purpose of which is to support and protect the family, the spouse and children, and to educate and train the young. Such statutes are to be liberally construed toward effectuating that purpose. Schooley v. Schooley, 184 Iowa 835 [169 N.W. 56, 11 A. L. R. 110]. * * * Intention to waive the benefit of exemption laws must be clearly expressed."

This precise question has not been heretofore passed upon by this court. It is therefore helpful to look to the decisions of the federal courts and courts of other states. The case of Fox v. Swartz, 235 Minn. 337, 51 N.W.2d 80, 30 A. L. R.2d 739, is a leading case dealing with the questions here involved.

SUMMARY OF DECISION—"The cash surrender value and accumulated dividends of a fifteen-year endowment policy were sought by an assignee of a judgment against the insured to be subjected to the execution involved * * *. * * * the insured, who reserved the rights to change the beneficiaries * * *. The policy had not yet matured and the withdrawal options had not been exercised by the insured." 30 A. L. R.2d 739.

" '61.14 Proceeds of life policy, who entitled to. When any insurance is effected in favor of another, the beneficiary shall be entitled to its proceeds against the creditors and representatives of the person effecting the same.' * * *

" '61.15 Exemption in favor of family; change of beneficiary. Every policy made payable to, or for the benefit of, the wife of the insured, or after its issue assigned to or in trust for her, shall inure to her separate use and that of her children, subject to the provisions of section 61.14. The person applying for and procuring the policy may change the beneficiary or beneficiaries, if the consent of the beneficiary or beneficiaries named in the policy is obtained, or if a power so to do is reserved in the contract of insurance,' * * *.

"* * * Insofar as such dependents are the beneficiaries, the insurance proceeds by statutory command inure to their

separate use and benefit and are exempt from seizure by such creditors. It is elementary that statutes are to be interpreted and construed in keeping with the object to be attained. §645.16. If we were to hold that the cash-surrender option of the insured, or any other interest of the insured under the policy prior to its maturity, is a property right which is not exempt, but is available to the insured's creditors, the protective benefits would be wiped out, and we would thereby defeat the statutory purpose. See, 22 Am. Jur., Exemptions, §75. In Murphy v. Casey, 150 Minn. 107, 109–110, 184 N.W. 783, 784, this court said: 'While it is true that the insured may cash in his policy without regard to the wishes of the beneficiary, that reserved right, since the insurance was effected and taken out for the benefit of the latter, to give force and effect to the statute, must, as to creditors seeking to exercise it in the place and stead of the insured, be deemed and held subordinate to the rights of the beneficiary. There are no sound reasons, either in morals or in equity and good conscience, why the creditor, to the detriment of the beneficiary, should be given the right and privilege of the insured in such cases. No credit is extended to the insured on the faith of the insurance, for all persons dealing with him are bound to know the law, and that money to become due thereon, when payable to a third person, is exempt from their claims. The statute is wise in its purpose, securing as it does after the death of the insured pecuniary aid and assistance to the beneficiary, usually someone who is dependent upon the insured for support, and should not be frustrated or impaired by opening the door to those who have no just or equitable claim to the money.' " Fox v. Swartz, supra, 30 A. L. R.2d at pages 745, 748.

From Jens v. Davis, 8 Cir., 280 F. 706, 708, we quote:

"Other decisions have held that the fact that the insured could change the beneficiary or could receive the surrender value does not avoid the exemption of a policy on the bankrupt's life payable to a married woman, under statutes providing that a policy of insurance payable to, or for the benefit of, a married woman inures to her benefit free from the claims of creditors. [Citing cases] * * *

"A statute of Missouri provided that a policy of life insur-

ance 'expressed to be for the benefit of the wife of the insured shall inure to her separate benefit independently of the creditors' * * * of the husband. A policy of insurance on the life of a husband, payable at his death to his wife, allowed him to change the beneficiary, to obtain its surrender value, or to obtain loans upon it as collateral security. The insured became a bankrupt without having exercised any of these rights. The decision in that case held that such a policy did not pass to the trustee in bankruptcy, because its primary purpose was the insurance of the wife, and the right to make a change of beneficiary or to surrender the policy was but incidental to its main purpose, and the rights of the parties were fixed at the time of the adjudication. It was also pointed out that, in the modern conduct of the life insurance business, practically all policies contain such provisions, and the exemption statute would have almost no field of operation, if it applied only to policies without such privileges to the insured.

"The principles announced in that decision determine the questions presented in this case. They are in harmony with decisions of other courts, accord with the liberal construction usually given to exemption laws * * * and as so applied to the Iowa statute in the case of Steele v. Buel, supra [104 F. 968], they give effect to the words of the statute, that the policy of insurance itself inures to the separate use of the husband or wife and children of the insured, independently of his creditors. The Iowa statute does not say that the exemption is contingent upon the absence from the policy of a right to accept a surrender value or of the right to change the beneficiary, but the construction placed upon the statute by the trustee requires the inadmissible interpolation of conditions to that effect."

II. The trial court ordered the defendant to "proceed forthwith to take such steps as to collect and assign over to the judgment creditor * * * the amounts due and collectible at this time upon said two insurance policies." The defendant, having refused to comply, claims the court erred "in finding that the defendant had any property which could be applied in satisfaction of plaintiff's judgment." In the case of Fox v. Swartz, supra, it is held that in the absence of the exercise by the in-

sured of his option to take the cash surrender value and dividends of an unmatured endowment policy, there is no debt due and payable by the insurer to the insured, and the right of the insured to create such a debt by exercise of the option is not an asset available to creditors, but is a right purely personal to the insured.

Quoting from the editorial summary following the citation of Marquis v. New York Life Ins. Co., supra (37 A. L. R.2d 261, 281):

"Even though a policy of life insurance has a cash surrender value which the insured may obtain if he elects to exercise his option to surrender the policy and take such value, the general import of the greater amount of authority is that ordinarily a creditor of the insured cannot reach and subject to his claim the cash surrender value of such a policy where the insured has not exercised his option to surrender the policy for such cash value. * * *

"Even where the creditor of a life insured has pursued an equitable remedy for the purpose of reaching the cash surrender value of the life insurance policy, it has more generally been considered that where the insured has not exercised his option to surrender the policy for its cash surrender value, the insured's optional right to obtain such surrender value does not constitute a debt due him by the insurer and that a court of equity will not compel the insured to exercise such option for the benefit of his creditors."

The learned trial court based its holding upon In re Estate of Tellier, supra, in which case the court was called upon to determine whether or not the unexpended proceeds of a policy of insurance payable to a surviving widow were exempt, after her death, from liability for her debts contracted prior to the death of the insured husband. The statements in that opinion on which the trial court relied were not necessary to a determination of the case and were therefore mere dicta and not authority to be followed in this case. We are constrained to say that even if the pertinent statements in the Tellier case were not dicta, we choose to follow the more liberal construction of the applicable statute and must therefore reverse.—Reversed.

LARSON, C. J., and BLISS, GARFIELD, OLIVER, HAYS, PETERSON, and THORNTON, JJ., concur.

THOMPSON, J., concurs in result but dissents from Division I.