[Civ. No. 4403. First Appellate District, Division One.—February 14, 1923.]

## T. W. McDEVITT, Respondent, v. W. F. JONES, Sheriff, etc., Appellant.

[1] CONVERSION — DENIAL OF NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DISCRETION NOT ABUSED.—In this action against a sheriff for conversion as the result of a sale by him in his official capacity of certain cottonseed which was stored in a warehouse in the name of the plaintiff's mortgagor, there was no abuse of discretion in denying the defendant's motion for a new trial upon the ground of newly discovered evidence addressed to the question of ownership and right of possession of the seed.

[2] ID.—MORTGAGE OF COTTON CROP—DEFAULT—POSSESSION BY MORTGAGEE—SUFFICIENCY OF EVIDENCE.—In this action against a sheriff for conversion as the result of a sale by him of certain cottonseed which was stored in a warehouse in the name of the plaintiff's mortgagor, and which was sold under execution to satisfy the claim of a judgment creditor of the mortgagor, the evidence shows that after the mortgagor's default the plaintiff took possession of the seed pursuant to the terms of his mortgage, and that the mortgagor never had possession after such default.

[3] LANDLORD AND TENANT—MORTGAGOR OF CROP—ASSIGNEE OF LEASEHOLD INTEREST—RIGHT TO INCUR EXPENSES.—Where a mortgagee of a cotton crop was also assignee of the leasehold interest of the mortgagor, he had the legal right to incur such expenses at the charge of the property as were necessary to protect it from forfeiture or depreciation, and to the extent of his interest he was the owner of the collateral as against the assignor and those claiming under him, or against attaching creditors of the mortgagor.

[4] ID.—REMOVAL OF CROP—MORTGAGE LIEN, WHEN NOT TERMINATED. Where a mortgagee of a cotton crop was also the owner by assignment of the leasehold, there could be no termination of

his right to the possession of the crop and the seed by reason of any statute pertaining to crop mortgages.

[5] CONVERSION — PLEADING — AMENDMENT OF COMPLAINT—TITLE.— Where in an action against a sheriff for conversion the defendant was named in the complaint "W. F. Jones," and then "Sheriff of Fresno County," the conjunction "as" not being interposed in the title, leave to amend before trial so that there would be proper designation of the defendant as sheriff did not affect the substantial rights of the defendant where before amendment he filed his answer in which he alleged that at all times mentioned in the complaint he was such sheriff and as such levied upon the property in suit.

APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Affirmed.

The facts are stated in the opinion of the court.

S. C. Schaefer, Everts, Ewing & Wild and J. R. Fitch for Appellant.

Gallaher, Simpson & Hays and C. H. Hartke for Respondent.

ST. SURE, J.—Appeal by the defendant, W. F. Jones, as sheriff of the county of Fresno, from a judgment rendered against him in the sum of $7,890.13, in an action for conversion as the result of a sale by the sheriff of certain cottonseed of which plaintiff claimed to be the owner.

On the twentieth day of February, 1919, McDevitt Cotton Company, a corporation, leased to E. D. Skinner 931 acres of land in Fresno County for the purpose of raising cotton. Prior to August 14, 1919, plaintiff advanced in excess of $10,000 to Skinner to purchase seed for planting and pay labor and finance farming operations on the land. On August 14, 1919, Skinner informed plaintiff that through lack of funds he was unable to continue the farming operations, and offered to surrender the lease to plaintiff; whereupon an arrangement was made between the parties whereby plaintiff advanced to Skinner the sum of $22,500, and Skinner gave to plaintiff his promissory note, a crop mortgage, and an assignment of the lease as security for the note and all other moneys to be advanced by plaintiff to complete the work of producing and harvesting the cotton crop. On De-

cember 15, 1919, plaintiff assigned the crop mortgage to Geo. H. McFadden Bros.' Agency; the consideration named in the assignment was ten dollars, but the evidence shows that the real consideration was the note of plaintiff for $22,500, which amount plaintiff had borrowed from the agency and loaned to Skinner.

This mortgage, with Skinner as party of the first part and plaintiff as party of the second part, contained, among other provisions, the following:

"And the party of the first part does hereby covenant and agree to and with the said party of the second part, his heirs and assigns that he will well and carefully tend, take care of and protect the said crop while growing, and until fit to harvest and then faithfully and without delay, harvest and gin the same, and deliver the same immediately into the possession of the said party of the second part, or his assigns, to be by him held and disposed of for the payment of the debt hereby secured; that in default of either of the above acts to be done by the said party of the first part, the said party of the second part, or his assigns, may enter upon the premises and take all necessary measures for the protection of said crop, and may retain possession thereof, harvest, gin the same, and all expenses so incurred and all that may become necessary, in the keeping and care of said crop, as well as the hauling, storing and delivery thereof, shall be secured by this mortgage, and shall be first payable in United States gold coin, out of the money realized from the sale of said crop; that said party of the second part, or his assigns, shall and may at all times enter into the premises to view the same, or to take measures necessary for the protection of said crop, or his interests therein, and that upon harvesting thereof, he shall be entitled to the immediate possession of the same, and may haul and store the same, at the expense of the said party of the first part; and said party of the first part does for the purposes aforesaid, make, constitute and appoint the said party of the second part, and his assigns, his true and lawful attorney irrevocable, with full power to enter upon said premises and take possession of said crop, and take care of, protect, harvest and gin the same, in case of any default on his part of the covenants herein contained; and he does further authorize said party of the second part or his assigns to take

possession of said crop when harvested and ginned to haul and store the same, to sell and dispose of the same, or any part thereof, at such time and times, and for such sum or sums of money as he may deem proper, and for the best advantage of all concerned, and out of the proceeds of said sale, first, to retain the costs and charges thereof, and any and all expenses by the party of the second part incurred in the care and protection, harvesting, hauling or storing the same, and commission for selling the same; second, to apply the residue to the payment of said note, rendering the overplus, if any there be, to the said party of the first part or assigns.''

Skinner defaulted. Plaintiff was forced to carry on, which he did, advancing the necessary money to pay all expenses, which reached a total sum in excess of $50,000. The crop was harvested and placed in the warehouse of the California Products Company at Fresno in Skinner's name, likewise the seed after the cotton had been ginned. At the trial it was stipulated ''That the California Products Company did business and handled the cottonseed and other products of the McDevitt Ranches and carried the products that were stored with it in the names of the various tenants of the McDevitt Cotton Company and T. W. McDevitt, for the purpose of the designation of the particular account to which they were to be charged.''

After the cotton was ginned plaintiff, on or about the 8th of January, 1920, entered upon negotiations for the sale of the seed. He had several conversations with Skinner, and it was arranged to sell the seed to Robert Hume, president of the California Products Company, for seventy-seven dollars per ton, the proceeds to be credited to Skinner's account, then in excess of $20,000, due to plaintiff. Hume was in New York at the time that the offer was accepted by him, but he confirmed the sale by wire on January 9th. On the thirteenth day of January, 1920, plaintiff deposited a demand draft on the California Products Company for the sum of $9,625 for 125 tons of seed sold to the Products Company at seventy-seven dollars per ton. The secretary of the Products Company returned the draft with the statement that no instructions had been received from Hume to pay for the seed, and stating that Hume was at that time on his way from New York to California. Upon Hume's

arrival in California plaintiff's local manager and Skinner interviewed him, and he confirmed the purchase and instructed his cashier to make a check for the full amount of the seed in the name of Skinner. The manager of plaintiff requested the check to be made payable to plaintiff. Skinner objected to this, but stated that if plaintiff would let him have $5,000 he would consent to have Hume deliver the check to plaintiff immediately, otherwise he would go out and see what money he could get for the seed. Skinner's creditors were pressing him. The following day the seed was attached. Thereafter Hume refused to pay for the seed because of litigation. The seed remained in the warehouse of the California Products Company. On January 23, 1920, plaintiff repaid the McFadden Agency the sum of $22,500, which he had theretofore borrowed and loaned to Skinner, and on the following day the crop mortgage which he had hypothecated with the agency as security was reassigned to him.

On the thirtieth day of January, 1920, Phillip M. Gaffey brought suit in the superior court of Los Angeles County against Skinner to recover on a promissory note, and at the same time an attachment was issued and levied upon all the seed stored in said warehouse in the name of Skinner. On the nineteenth day of February, 1920, plaintiff filed a third-party claim with the defendant as sheriff, alleging that he was the sole owner of the property under attachment, and that the same was sold to him on the twenty-sixth day of November, 1919. There is some evidence that on November 26, 1919, Skinner wrote the California Products Company, requesting it to forward "All original gin receipts, gin reports and cardoor receipts for cotton ginned in my name" to California Cotton and Factorage Company, Los Angeles, of which company plaintiff was president. The court found, however, that plaintiff took possession of the seed on the eighth day of January, 1920. Thereafter, on the nineteenth day of February, 1920, judgment by default was entered in the suit of *Gaffey* v. *Skinner*, and thereupon an execution was issued, and on the twelfth day of April, 1920, the seed was sold by the sheriff for the sum of $4,000. The trial court gave judgment for plaintiff as above stated.

Defendant moved for a new trial upon the grounds of newly discovered evidence, insufficiency of the evidence to

justify the decision, and that the decision was against law. The motion was denied.

In support of the motion defendant presented affidavits of H. A. Stanton, S. C. Schaefer and E. D. Skinner. Plaintiff filed counter-affidavits. All of the affidavits are before us for consideration. H. A. Stanton, the secretary of the California Products Company, was a witness called by defendant, and testified at the trial. Stanton's affidavit is a belated attempt to show ownership and right to possession of the seed in Skinner. Determinative of this question is the crop mortgage under the terms of which plaintiff harvested and took possession of the cotton and the seed after the default of Skinner. Further, it was stipulated at the trial that Skinner's name was connected with the seed by the California Products Company merely for convenience in bookkeeping.

The affidavit of Schaefer, one of the attorneys for the defendant, shows that C. H. Hartke, one of the attorneys for the plaintiff, prepared an affidavit which he requested Skinner to sign, and that Schaefer had come into possession of the unsigned affidavit within the week prior to the making of the affidavit by Schaefer. He states in his affidavit "That said E. D. Skinner refused to acknowledge and execute the same for the reason that the statements contained therein relative to the alleged ownership and right of possession of the cottonseed was in T. W. McDevitt, were untrue." In his affidavit Skinner only states in refutation of the proposed affidavit that he, Skinner, was the owner of the seed and that he exercised control over it. Hartke's affidavit contains a denial of both of these statements.

[1] We are of opinion that there was no abuse of discretion on the part of the trial court in denying the motion for a new trial upon the ground of newly discovered evidence.

Defendant attacks what he is pleased to designate the "so-called sale of the property in question by Skinner to McDevitt [plaintiff herein] on the eighth day of January, 1920," as being fraudulent and therefore void as against creditors.

[2] The court did not find that there had been a sale of the seed, but it did find, and we think its decision is fully supported by the evidence, that "On or about the eighth

day of January, 1920, the said E. D. Skinner, in consideration of said sum of $22,500, which the said plaintiff herein did advance to the said Skinner on said fourteenth day of August, 1919, and of said other sums of money advanced by plaintiff herein to said E. D. Skinner on account of said farming operations, instructed and authorized the plaintiff herein to sell and deliver all said cottonseed at whatever price the plaintiff could procure therefor, and to credit the amount received for said cottonseed upon said note secured by said crop mortgage, and said moneys owing from the said Skinner to the said plaintiff herein, and the said Skinner did then and there authorize the plaintiff herein to take possession of said cottonseed and to deliver possession thereof to the plaintiff herein, and the plaintiff herein accepted the possession thereof.''

Plaintiff was in the possession of the seed pursuant to the terms of the mortgage. The undisputed evidence shows that plaintiff, after the default of Skinner, took possession of the cotton, harvested the crop, shipped it to the California Products Company warehouse, and stored it there (for convenience of bookkeeping) in the name of Skinner, paying all charges for ginning, insurance, taxes, and storage. Skinner never had possession of the cotton or the seed after he abandoned his contract.

[3] The uncontradicted evidence further shows that the crop mortgage was given not only to secure the note for $22,500, but also for additional and future advances. (*Langerman* v. *Puritan Dining Room,* 21 Cal. App. 637, 657 [132 Pac. 617].) Plaintiff was also assignee of the leasehold interest of Skinner. As such he had the legal right to incur such expenses at the charge of the property as were necessary to protect it from forfeiture or depreciation. (5 C. J. 957, 958; *Hill* v. *Eldred,* 49 Cal. 398.) To the extent of his interest he was the owner of the collateral as against the assignor and those claiming under him, or against attaching creditors of the assignor. (5 C. J. 957; *Estate of Phillips,* 71 Cal. 285 [12 Pac. 169]; *Frink* v. *Le Roy,* 49 Cal. 314.) Defendant contends that the mortgage lien of plaintiff terminated with the removal of the crop from the land, citing section 2972 of the Civil Code. [4] Since plaintiff was also the owner by assignment of the leasehold, there could be no termination of his right to the possession of

the crop and the seed by reason of any statute pertaining to crop mortgages. (*Summerville* v. *Kelliher,* 144 Cal. 155 [77 Pac. 889] ; *Crosby* v. *Fresno,* 30 Cal. App. 308 [158 Pac. 1070].)

[5] The final point urged by defendant is that the action was not brought against the sheriff of the county of Fresno, and upon that ground and for that reason no cause of action was stated. The defendant was named in the complaint "W. F. Jones," and then "Sheriff of Fresno County," the conjunction "as" not being interposed in the title. At the commencement of the trial plaintiff asked to be permitted to make an amendment so that there would be proper designation of the defendant as sheriff of Fresno County. Objection was made upon the ground that such an amendment would state a new cause of action. The record shows that before the trial defendant filed his answer in which he alleged that he at all of the times mentioned in the complaint was the duly elected, qualified, and acting sheriff of the county of Fresno, and that he served the writ of attachment as such sheriff, and as such officer levied the writ upon the cottonseed in suit. It therefore appears that defendant fully understood the character of the action, the effect of his possession and disposal of the seed, and all of the issues sought to be raised by the pleadings. The complaint was amended to conform to the technical rule requiring it, the substantial rights of the defendant were in no way affected, and we think that the amendment was properly allowed by the court.

The judgment is affirmed.

Richards, J., and Tyler, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 12, 1923.

All the Justices concurred.