[L. A. No. 13383. In Bank.—June 28, 1932.]

MISSOURI STATE LIFE INSURANCE COMPANY (a Corporation), Respondent, v. C. L. GILLETTE, Sheriff, etc., et al., Appellants.

M. C. Atchison and Harry W. Horton for Appellants.

Hickcox & Trude and Chapman & Chapman for Respondent.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, Fourth Appellate District, in order to give further consideration to the question of the liability of defendant Maryland Casualty Company. We are satisfied that the opinion of Mr. Presiding Justice Barnard properly disposes of the other issues of this case, and we adopt the following portions of said opinion as part of the opinion of this court:

"The facts of this case are as follows: The plaintiff owned land in Imperial county and on October 8, 1927, leased the same to one Jack Kennedy for a term of three years, the lessor to receive as rental one-fourth of all the grain grown on the premises. On October 28, 1927, the plaintiff loaned to Kennedy the sum of $680 for the purpose of enabling him to farm the land and on that day Kennedy executed and delivered to the plaintiff his prom-

issory note for that amount, with interest, secured by a crop mortgage covering all grain grown on the land, which mortgage was in all respects properly executed and recorded. During the crop season of 1928 a crop of barley matured first and the plaintiff permitted Kennedy to sell the same in his own name and to retain all of the proceeds thereof except the sum of $157, which was paid to the plaintiff. When the wheat matured it was harvested and delivered to the plaintiff at Seeley, California, on May 12, 1928. On May 14, 1928, the defendant Gillette, as Sheriff of the County of Imperial, levied an execution upon this wheat, the execution being issued in another action wherein another party had recovered a judgment against the said Jack Kennedy. The plaintiff filed with the sheriff a duly verified third party claim, setting forth its claim to the ownership and right of possession of the said wheat. An undertaking was then filed with the sheriff in accordance with section 689 of the Code of Civil Procedure. Following that and on May 23, 1928, the sheriff sold the wheat at public auction. This action was brought by the third party claimant against the sheriff, the Maryland Casualty Company, the surety on the sheriff's official bond, and also against R. Y. Watson and Richard Brackenbury as sureties upon the undertaking filed in accordance with section 689 of the Code of Civil Procedure. After a trial judgment was entered in favor of the plaintiff for $1358.70 as against the defendant sheriff and the defendant Maryland Casualty Company, and it was further ordered that the plaintiff take nothing against the defendants Watson and Brackenbury. From this judgment both the sheriff and the surety on his official bond have appealed, both appeals being, by stipulation, submitted upon one transcript and one set of briefs.

■ "So far as the appellant sheriff is concerned, the only grounds for reversal urged are that the amount of the judgment is excessive in any event, and that, under the evidence, the respondent had no right to the grain, since its claim was fully paid. In reference to the first contention, it is argued that the evidence shows that the grain weighed 61,620 pounds, that its greatest value according to the testimony was $1.40½ per hundred, and therefore, that the judgment should not have been for more than $865.76. It is apparent that counsel has made a miscalculation, as the

evidence of value referred to was $2.40½ per hundred instead of $1.40½. Appellants' contention that the respondent's claim was fully paid rests partly upon a similar miscalculation and partly upon a reliance upon only a portion of the evidence, together with a mistaken claim of law. In arriving at their conclusion they not only figure the wheat at $1.40½ per hundred instead of $2.40½, but they claim the crop of barley sold for around $1,500 and that the respondent received at least $1,214 of that amount, while they figure the total amount coming to the respondent was $1,340.50. The court found upon sufficient evidence that the barley in question sold for $800 and that the said Kennedy, with the consent of respondent, retained all of the proceeds of said barley except the sum of $157, which was paid to the respondent on account of the rent. While the appellants argue from a portion of the evidence that the respondent received all of the proceeds of the barley and thereupon reloaned most of the same to Kennedy, the findings above referred to are fully supported by the evidence. ■ The court was justified in finding that the respondent merely permitted said Jack Kennedy to retain most of the proceeds of the barley, that it merely waived its crop mortgage on that portion of the crop, and that the note and obligation of Kennedy was by no means extinguished (*Grangers' Business Assn.* v. *Clark*, 84 Cal. 201 [23 Pac. 1081]). It fully appears from the evidence that upon the items of rent and the crop mortgage, the respondent had coming from Jack Kennedy on the day the sheriff took possession of the wheat, at least $1,316. In addition to those items, it appears that the respondent had guaranteed the expense of harvesting the crop of wheat, amounting to several hundred dollars. It further appears that the wheat had been completely and entirely turned over to the respondent by Jack Kennedy two days before it was levied upon by the sheriff. The amount due to the respondent was unquestionably ample consideration for the delivery of the wheat and in any view of the case, the respondent was damaged in the full amount of the value of the property.

. ■ . . . . . . . . . . .

■ "The court found that the defendants R. Y. Watson and Richard Brackenbury did not file a 'bond of indemnification' with the said sheriff. This finding is not sustained

by the evidence. It was both stipulated at the trial and testified to by a deputy sheriff that such a bond was furnished. The respondent has not appealed from that portion of the judgment which relieved Watson and Brackenbury from responsibility, and, therefore, the question whether they could be joined with the sheriff as defendants in this action is not before us. Furthermore, the indemnity bond which they signed does not appear in the record and its provisions are unknown to us. In anything said in this opinion we are not in any manner attempting to pass upon whether these bondsmen are liable to the appellant sheriff.''

■ Defendant Maryland Casualty Company, surety on the sheriff's official bond, contends on appeal that it is not liable for the acts of the sheriff in that he merely performed the duties required of him by law. It is said that under section 689 of the Code of Civil Procedure, as it read at the time of the levy of execution, the sheriff was bound to keep property upon the filing of a third party claim until the filing of an undertaking of indemnity by the creditor, but that thereafter he was compelled to execute on the property. Hence it is concluded that he merely performed the acts required by law and even if he is himself liable, such liability is not within the terms of his bond. We need not discuss the effect of section 689 since it clearly appears that the sheriff violated another statute, section 2969 of the Civil Code. This section provides, in substance, that where there is a chattel mortgage on personal property, no levy of execution may be made upon such property unless the officer first tenders to the mortgagee the amount of the mortgage debt and interest, or deposits the same with the county clerk or treasurer, payable to the order of the mortgagee. In the instant case, the wheat was turned over to the plaintiff. When execution was levied, it filed a third party claim. By the terms of its mortgage it was entitled to possession of the wheat, and the taking of possession under the mortgage did not extinguish its lien. (See *Summerville* v. *Kelliher*, 144 Cal. 155 [77 Pac. 889]; *Wixon* v. *Davis*, 57 Cal. App. 620 [207 Pac. 694]; *McDevitt* v. *Jones*, 60 Cal. App. 773 [214 Pac. 661].) The sale by the sheriff without tender of the mortgage debt was therefore wrongful, amounting to a conversion. (*Sousa* v. *Lucas*, 156 Cal. 460 [105 Pac. 413]; *Passow & Sons* v. *United States F. & G. Co.*, 56 Cal. App.

72 [204 Pac. 545].)  His act was squarely within the terms of the bond.

The judgment against defendants Gillette and Maryland Casualty Company are affirmed.