346 P.2d 1053

**EQUITABLE LIFE ASSURANCE SOCIETY OF UNITED STATES, a Corporation, Plaintiff-Respondent,**

v.

**Samuel H. BENNION, sometimes known as S. H. Bennion, and Faye Judd Bennion, sometimes known as Faye J. Bennion, husband and wife, Defendants-Appellants.**

**No. 8749.**

Supreme Court of Idaho.

Nov. 19, 1959.

447

Rulon R. Price, Idaho Falls, for appellants.

Holden, Holden & Kidwell, Idaho Falls, for respondent.

KNUDSON, Justice.

On March 28, 1953 respondent loaned appellants the sum of $8,500 and to evidence such indebtedness appellants executed a promissory note. As security for the payment of said note appellants executed a mortgage upon real estate together with an assignment of a life insurance policy upon the life of appellant Samuel H. Bennion. The mortgage contained the following provisions to wit:

"Second. That so long as the debt hereby secured, or any part thereof,

remains unpaid, the mortgagor will pay as the same becomes due and payable all taxes, assessments and other charges imposed by law upon or against the said mortgaged premises and will keep in full force and effect that certain policy or policies of life insurance more particularly described in said note issued by the mortgag*ee* and assigned to the mortgagee as collateral security for the payment of the indebtedness secured hereby, * * *.

"Third. It is hereby expressly agreed that the whole of said principal sum, or so much thereof as shall remain unpaid, shall become due at the option of the said mortgagee after default in the payment of any installment of principal or interest for 30 days, or after default in the payment of any tax or assessment, as the same becomes due and payable, or in the event the mortgagor shall fail to keep any policy or policies of life insurance held as collateral security hereto in full force and effect, * * *."

Appellants did not pay, when due, the taxes levied against the mortgaged premises for the year 1953 and on January 19, 1955 respondent paid such delinquent taxes which, together with penalty and interest, amounted to the sum of $338.60. Respondent thereafter made demand upon appellants for the repayment of said taxes and informed appellants that if they failed to repay the same the respondent would elect to accelerate the due date of the unpaid balance of the loan and foreclose the mortgage. During May 1957 appellants tendered to respondent a check in the sum of $206.87 in repayment of such tax obligation which check was returned to them for the reason that the total tax obligation with accrued interest at that time amounted to $261.74.

Subsequent to June 1957 negotiations were had between the parties, during which appellants requested respondent to apply the cash surrender value of the insurance policy toward repayment of the taxes and interest. Such value was at that time in excess of the amount due for taxes and interest. Respondent refused such request but notified appellants that it would permit a loan against the insurance policy with which to pay the tax obligation. No application for a loan was made. On December 17, 1957 appellants wrote respondent offering to pay the note in full and directed respondent to apply the cash surrender value of the insurance policy against the retirement of the contract. Six checks in the amount of $90.53 each and one in the amount of $5,974.65, together with the insurance policy, were enclosed with the letter. Pursuant to such directive the policy was surrendered as of January 2, 1958 at a value of $451.94. On about January 22, 1958 appellants were requested to send a collect telegram to respondent verifying cancellation and surrender of the policy of

life insurance. Appellants refused to send the telegram and shortly thereafter stopped payment on the $5,974.65 check. Foreclosure action was instituted on February 28, 1958 and from a judgment for respondent this appeal is taken.

■ Appellants contend that the tax bill became a part of the secured, or mortgage, indebtedness and that the application of the cash surrender value of the policy to the mortgage indebtedness herein prevented a default under respondent's agreement to repay any taxes advanced; or, if such default had occurred, such application canceled such default. A pertinent section of the mortgage provides as follows:

"Eighth. And the mortgagor does further covenant and agree, that in default of the payment of any taxes, charges and assessments which may be imposed by law upon the said mortgaged premises, or any part thereof as the same becomes due and payable, it shall and may be lawful for the said mortgagee, without notice to or demand from the mortgagor, to pay the amount of any such tax, charge or assessment, with any expenses attending the same, and any amount so paid, the mortgagor covenants and agrees to repay to the mortgagee, with interest thereon, at the rate of six per cent per annum, without notice or demand, and the same shall be a lien on the said premises,

and be secured by the said note and by these presents; and the whole amount hereby secured, if not then due, shall thereupon, if the mortgagee so elect, become due and payable forthwith, anything herein contained to the contrary notwithstanding."

It is clear that under the terms of the mortgage contract the appellants are obligated to repay to the respondent, without notice or demand, the amount paid by respondent to satisfy the delinquent tax obligation. It was stipulated that demand upon appellants for repayment of such tax had been made at various times. Notwithstanding the fact that such tax repayment and any interest accrued thereon became secured by the mortgaged property it was and remained an obligation separate and apart from the obligation evidenced by the promissory note. Such repayment was payable "without notice or demand".

Appellants contend that it was the duty of respondent to accede to appellants' request to apply the cash surrender value of the insurance policy to payment of the tax obligation. There is no provision in any of the instruments involved which directs or infers that respondent is under any such obligation. The assignment of the insurance policy provides as follows:

"In the event said policy shall lapse after default in the payment of any premium due thereon if said policy

shall have a cash value, the Society agrees to exercise only the option to continue the insurance as non-participating paid-up extended term insurance as provided in said policy and to hold such extended term insurance as collateral security until said loan is paid in full and satisfied or foreclosed and the mortgaged premises bought in by the Society or conveyed to the Society in lieu of foreclosure, in any of which events, said extended term insurance shall be surrendered to the Insured.

"In the event of default in the payment of the amounts due on said loan or in complying with any other terms and conditions of the mortgage or trust deed, if said policy shall be kept in full force and effect, the Society will continue to hold said policy as collateral security in the same manner as provided for extended term insurance in the foregoing paragraph."

The rights and duties under the assignment are controlled by the terms of the instrument and the intention of the parties to it. See 45 C.J.S. Insurance §§ 434, 435, p. 58. It is clear that had the respondent arbitrarily and of its own volition terminated the policy and applied such cash value in repayment of such tax, it would have violated the terms of the assignment. Nor are appellants given any right or authority to direct that the policy be surrendered and the cash value applied in any manner other than as its terms provide. Before the debt secured is paid, the assignee is, to the extent of his interest, the owner of the collateral as against the assignor. McDevitt v. Jones, 60 Cal.App. 773, 214 P. 661; 6 C.J.S. Assignments § 93, p. 1150; 45 C.J.S. Insurance § 348, p. 61. The cash surrender value of the policy was not a debt to appellants from respondent over which appellants had control after the assignment. Nor was respondent obligated to apply the loan value of the policy on the tax advance. Baker v. Wilkes, 43 Idaho 639, 252 P. 427, 51 A.L.R. 1243; Fox v. Swartz, 235 Minn. 337, 51 N.W.2d 80, 30 A.L.R.2d 739. If appellants' said contention were true appellants could have, at any time, directed that the insurance policy be surrendered and the cash value applied to any payment in default and thus deprive respondent of valuable security relative to the remaining debt. Such contention cannot be sustained.

Appellants cite the case of Union Central Life Insurance Co. v. Nielson, 62 Idaho 483, 114 P.2d 252, in support of their contention that the tax repayment obligation became a part of the mortgage debt and that the amount of the cash surrender value, when applied to the mortgage indebtedness, automatically cured any default that might have previously existed in connection with such tax obligation and consequently respondent was not entitled to proceed in foreclosure. In that case the court had

under consideration an agreement extending the time of payment of the mortgage debt and its effect upon the mortgagor's obligation to repay the amount of taxes paid by the mortgagee relative to the mortgaged property. The intention of the parties to the extension agreement and the application of the statute of limitations were involved. No extension agreement or question of limitations is involved in the instant case. We are here concerned with the question as to whether the application of the surrender value as made by respondent cured any default that existed. The circumstances under which the insurance policy was surrendered must be considered. Appellants had decided to pay off their entire obligation to respondent and under date of December 17, 1957 appellants addressed a letter to respondent in which they enclosed the insurance policy and checks to accomplish full payment. Such letter in effect directed that the cash surrender value of the insurance policy be applied "against the retirement of their contract" obligation. For the purpose of accomplishing the settlement proposed by appellants respondent credited their account with the surrender value of the policy, endorsed and presented the checks for payment. Before the checks were presented to the drawee bank the appellants stopped payment on the $5,974.65 check. On the reverse side of the check and immediately above the respondent's endorsement was provided that "endorsement signifies payment of all and any obligations owed by maker to payee. Otherwise, return." Obviously the retirement of the entire obligation in accordance with appellants' offered settlement as provided in said letter of December 17, 1957 was prevented by the unexplained act of appellants in stopping payment on said check.

■ From these facts it is clear that the act of respondent in applying the cash value of the policy to the mortgage indebtedness was in pursuance of appellants' expressed instruction and tender to retire their entire contract obligation. It was neither the intent nor understanding of the parties that the cash value was to be applied in repayment of the existing tax delinquency thereby curing such default and to apply the overplus to the contract debt, thus depriving the respondent of the insurance collateral. The finding of the trial court that appellants were, at the commencement of this action, in default in their obligation to repay the taxes is adequately supported by the evidence.

■ Appellants further contend that equitable principles impose a duty upon respondent to apply the cash surrender value of the policy to cure such default in order to prevent a forfeiture. With this contention we do not agree. Appellants

failed to pay the taxes which became due in December 1953 claiming that they had a valid reason to question the amount of the assessment. No action or proceeding was taken by appellants relative to such assessment and on January 19, 1955 respondent paid the delinquent tax and penalty, amounting to $228.60. Under date of May 19, 1957 appellants mailed to respondent a check in the sum of $206.87 as repayment in full of the tax, penalty and accrued interest which at that time amounted to $261.74. The offer was refused. In response to appellants' request that the cash surrender value of the policy be applied in repayment of the tax account respondent notified appellants that it would grant a loan on the policy with which to pay the tax account and under date of October 1, 1957 forms upon which to make such loan application were forwarded to appellants' counsel. No such application was ever made. There is no evidence to sustain a contention that any inequitable conduct was indulged in by respondent. Every reasonable opportunity was afforded appellants to remedy the existing default and preserve their rights under their contract. Judgment of the trial court is affirmed with costs to respondent.

PORTER, C. J., and TAYLOR, SMITH and McQUADE, JJ., concur.