464 P.2d 547

Garth ELDRIDGE and Florence Eldridge, his wife, Plaintiffs-Appellees,

v.

Robert SALAZAR and Marilyn G. Salazar, his wife, and Security Federal Savings and Loan Association, Defendants-Appellants.

SECURITY FEDERAL SAVINGS AND LOAN ASSOCIATION, Third Party Plaintiff-Appellant,

v.

STEWART TITLE GUARANTY COMPANY and National Title Company, Third Party Defendants-Appellees.

No. 8885.

Supreme Court of New Mexico.

Jan. 19, 1970.

Harry O. Morris, Albuquerque, for appellants.

Stuart Hines, Albuquerque, for Garth and Florence Eldridge.

Clyde E. Sullivan, Jr., Albuquerque, for Stewart Title Guaranty Co.

OPINION

WATSON, Justice.

In this action plaintiffs-appellees Eldridge seek to foreclose a deed of trust on certain lots in Western Meadows Subdivision, Unit No. 2 in Bernalillo County, New Mexico. Plaintiffs allege and defendants Salazar and Security Federal Savings and Loan admit in their answer that they have an interest in Lot 2A, Block L of replatted Unit 3 of the same subdivision, at least part of which is included in the description in the trust deed.

National Title Company was named as trustee in the trust deed sought to be foreclosed against Bonita Rio Investment Company, Inc. Bonita had given its promissory note secured by the trust deed in payment for unsubdivided land purchased from the Eldridges in April, 1963. Prior to the purchase, however, the Eldridges, as owners, and Bonita executed a subordination agreement which, after reciting the necessity of a loan for the purchase, stated:

> "Owner agrees that his mortgage on such property be and hereby is subject to and subordinated in all respects to the mortgage of a lender, upon the lender's making such loan and obtaining a mortgage or deed of trust upon such property."

The deed of conveyance and the deed of trust were recorded with the county clerk; but the subordination agreement was simply retained in National's possession along with the other documents, and the court found that it acted as escrow agent as well as trustee for the Eldridges.

By warranty deed dated February 27, 1965 (but not recorded until May 24, 1967), Bonita conveyed some of the lots including Lot 2A, Block L of Unit 3 to Mock Homes, Inc. The trial court found that Bonita and Mock Homes were substantially one and the same as the same party owned both corporations. Mock Homes acquired a construction loan from Security Federal Savings and Loan Association, and gave Security a mortgage on Lot 2A. This

mortgage was recorded for Security by National on October 6, 1965, and on the same day National issued to Security a one-year interim title insurance binder for its principal, Stewart Title Guaranty Company. The trial court found that this binder represented only that title (not record title) to Lot 2A was vested in Mock Homes, that Security's mortgage on that date was a first lien on this lot, and that this representation was made because of National's possession of and control over the unrecorded deed to Mock Homes and the unrecorded subordination agreement given by the Eldridges.

After constructing a home on Lot 2A, Mock Homes went into bankruptcy; and shortly thereafter, on August 29, 1966, Security, without knowledge of the Eldridges' deed of trust, acquired a deed to Lot 2A from Mock Homes' trustee in bankruptcy. Before obtaining the deed from the trustee in bankruptcy, Security obtained a title report from Rio Grande Title Company, but this report went back only to October 6, 1965, the date of National's interim binder and did not reveal the plaintiffs' deed of trust.

On October 6, 1966, Security sold Lot 2A to the defendants Salazar, recorded a release of the Mock Homes mortgage, and received a mortgage back from the Salazars. Before making this sale and taking this action, Security obtained a full title policy from First Title Guaranty Company. Although the policy did not so indicate, First Title had relied on National's interim binder instead of making its own search of the record for the period prior to October 6, 1965, and consequently it did not show the Eldridges' trust deed in its policy. It was not until this suit was filed that Security learned that its mortgage from Mock Homes was not the only one of record against Lot 2A.

Security filed a third party complaint against National and Stewart Title Guaranty Company alleging fraud, deceit, and negligence in the issuance of the interim binder and the recording of their mortgage from Mock Homes without mentioning the superior deed of trust and the non-payment of 1964 taxes. The trial court dismissed this third party complaint and entered judgment for the plaintiffs, foreclosing their mortgage against the property including Lot 2A. The defendants and third party plaintiff appeal.

We agree with appellants that National in its various capacities as trustee, escrow agent, conveyancer, and title insurer made assumptions as to the effect and applicability of the subordination agreement which might not have been justified. Neither the Eldridges nor Bonita denied the authority of National to act as it did, and the trial court correctly concluded that Security's mortgage from Mock Homes was initially a valid first lien on Lot 2A. We also believe that the trial court was correct in dismissing the tort action third party complaint against National and Standard Title. There was substantial evidence for the trial court to find, as it did, that National made no misrepresentation by its title binder and that the essential elements of fraud and deceit were not present. See Sauter v. St. Michael's College, 70 N.M. 380, 374 P.2d 134 (1962).

The trial court found that National did not misrepresent the condition of the title in concluding that by virtue of the subordination agreement the mortgage given by Mock Homes to Security was superior to the deed of trust but found that when Security acquired the deed from Mock Homes' trustee in bankruptcy and released its mortgage "there was no longer any mortgage which could be subordinated to Plaintiffs' Deed of Trust." It concluded that because of the merger of titles, plaintiffs' deed of trust was elevated to a first lien on the subject property.

Based upon our ruling in Fowler Bros. v. Carter, 77 N.M. 571, 425 P.2d 737 (1967), appellant submitted the following requested conclusion:

"[T]hat by virtue of said subordination agreement dated August 15, 1962, plain-

tiffs' deed of trust was and is subordinated to the subsequent mortgage from Mock Homes to Security Federal; that the release or discharge by Security Federal of the Mock Homes mortgage dated October 4, 1965, to Security Federal does not operate as an extinguishment of the mortgage lien as against plaintiffs; and that the said Mock Homes mortgage to Security Federal still retains its priority over plaintiffs' deed of trust."

Here as in Fowler, supra, it cannot be said that rights of innocent purchasers or encumbrancers will be affected by placing the parties in the position contemplated by the plaintiffs in entering into their trust deed—subordination agreement arrangement and in leaving its operation and control up to National.

█ Appellees would distinguish Fowler, supra, from the present case because in Fowler the mortgaged property was conveyed to the mortgagee's assignee, but appellees do not point out why an assignee's rights would differ from those of his assignor, and we perceive no difference. Appellees agree that whether there is a merger is a question of intent but state that here Security's vice president testified that his understanding upon acquiring the title from the trustee in bankruptcy was that the Mock Homes mortgage was satisfied. However, if he did not know of appellees' trust deed (or of the subordination agreement) he could not have had an intent to take title subject to the prior lien. Bahrs v. Bastian, 192 Wis. 642, 212 N.W. 292 (1927); Bugden v. Bailey, 279 Mich. 12, 271 N.W. 534 (1937).

█ Appellees point out that in Fowler, supra, no release of mortgage was recorded, while here, after the sale to the Salazars and the receipt of the title policy from First Title Guaranty Company, Security recorded its release of mortgage. As we stated previously, the policy from First Title also erroneously indicated that Security's mortgage was the only one of record outstanding against the property, so here again, without knowledge to the contrary, no intent to act to its own detriment can be presumed from the recording of the release. McCraney v. Morris, 170 S. C. 250, 170 S.E. 276 (1933), 95 A.L.R. 622, and cases cited in the annotation following on page 628 and the subsequent annotation in 148 A.L.R. 816. It is the intent with which the release is made, not the making of the release, which controls. Scott v. Hill, 330 Mo. 490, 50 S.W.2d 110 (1932).

█ Finally appellees contend that Security has accepted other means of securing payment in that it can collect on its title policy from First Title. 59 C.J.S. Mortgages § 463 is quoted to the effect that a mortgage is discharged or reduced to the extent to which the mortgage proceedings against other security have resulted in the satisfaction of his claim. This principle has no application here because the First Title's policy was not security for the Mock Homes mortgage. Equitable Life Assurance Society of United States v. Bennion, 81 Idaho 445, 346 P.2d 1053 (1959). In addition there is no showing that this policy has resulted or will result in any satisfaction of the Mock Homes mortgage.

The fact that but for the subordination agreement the Mock Homes mortgage would be subsequent does not avoid the application of the equitable principle of placing the parties in the position contemplated by plaintiffs and giving effect to the subordination agreement. Lawton v. McIlvaine, 113 Fla. 743, 152 So. 179 (1934).

In the present case, in order to avoid prejudice to the contemplated positions of the parties, we must consider the entire escrow arrangement, not only the subordination agreement but the provisions of the deed of trust. When this is done we cannot say that it was contemplated that there might be outstanding mortgages prior to the plaintiffs' deed of trust.

Security contends that Lot 2A is no longer subject to plaintiffs' deed of trust. The deed of trust recites:

"Beneficiaries herein shall be entitled to a partial release of one of the following described lots for each $1,380.00, plus interest on said $1,380.00 paid on the principal balance hereinabove set out. It being understood that the $1,380.00 shall go to the reduction of the principal on each partial release."

■ Although Mr. Walcott, president of National, testified that he was authorized to release individual lots pursuant to this provision for Mr. Eldridge, he also said that neither Lot 2A, Block L, Unit 3 nor Lot 2, Block F, Unit 2 had been released, and that Security had not sought a release. The Company's record was illegible, however, and no finding was made as to the payment for releases or as to which lots had been released. Security cannot obtain greater benefits under the subordination agreement than those accorded others. This provision of the trust deed is equally applicable to it. Unless payment pursuant to this provision has been made for Lot 2A, Block L, Unit 3 or Lot 2, Block F, Unit 2, Security must make such payment before the lot is cleared of plaintiffs' deed of trust. To receive equity Security must do equity. Pugh v. Phelps, 37 N.M. 126, 19 P.2d 315 (1932).

■ Appellants sought dismissal of the action claiming the absence of indissenable parties. They say the suit should have been brought by National as trustee under the deed of trust sought to be foreclosed and that owners and lien holders of other lots should have been made defendants. Under the circumstances presented in this case if complete relief is to be accorded between the parties we believe National should be joined. Sections 21–1–1(19) and 21–1–1(21), N.M.S.A., 1953 Comp. This may be done at any stage of the proceedings; Smith v. Castleman (No. 8851, decided December 8, 1969), 81 N.M. 1, 462 P.2d 135; even after remand;

State ex rel. Skinner v. District Court, 60 N.M. 255, 291 P.2d 301 (1955). The owners and lienors of other lots need not be joined. Springer Corporation v. Kirkeby-Natus, 80 N.M. 205, 453 P.2d 376 (1969). Relief here will not require their presence.

We affirm the judgment dismissing the third party complaint but remand the cause to the trial court with instructions to take evidence, if necessary, and to ascertain and make a finding within 20 days as to whether the payment required for the release of Lot 2A was made pursuant to the terms of the deed of trust. In addition the trial court shall permit the joining of National Title Company as a party. If the court finds that payment has heretofore been made for the release, it shall direct such release by the trustee and enter judgment accordingly; in such event costs shall be borne by appellees Eldridge. If payment for the release of Lot 2A has not been made, defendant Security Federal Savings and Loan Association shall be allowed 20 days after such fact is determined and after National has been joined as a party to pay to National Title Company as trustee the sum of $1,380.00 plus interest on said sum as provided in the deed of trust attached to plaintiffs' complaint herein and to receive from the trustee thereof a release of said instrument discharging its lien against Lot 2A, Block L, Unit 3, Western Meadows Subdivision, and to thereafter enter judgment herein accordingly; in such event costs shall be shared equally by the parties Eldridge and Security.

Should no payment for the release appear to have been made and should defendant Security fail to tender the sum necessary for the release within the time above provided, the judgment appealed from shall stand as affirmed with costs assessed to appellant Security Federal Savings and Loan Association.

It is so ordered.

TACKETT, J., and GEORGE L. REESE, Jr., D. J., concur.